United States Court of Appeals
Fifth Circuit

**F I L E D**

April 4, 2006

Charles R. Fulbruge III
Clerk

Revised April 7, 2006

In the
United States Court of Appeals
for the Fifth Circuit

Nº 05-60695

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

GEORGE D. JOHNSON,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Mississippi

Before SMITH, GARZA, and OWEN,
  Circuit Judges.

JERRY E. SMITH, Circuit Judge:

George Johnson appeals his conviction, under 18 U.S.C. § 922(g)(1), of being a felon in possession of a firearm, arguing that the gun powder residue test performed on his hands, the results of which were admitted at trial, constituted an unlawful search and seizure in violation of the Fourth Amendment. Additionally, Johnson appeals his 120-month sentence on the basis of *United States v. Booker*, 543 U.S. 220 (2005). We affirm.

I.

While two police officers were in the process of arresting an individual responsible for causing a disturbance at a motel in Clarksdale, Mississippi, Johnson and other persons approached the officers, shouting threats at them.

After the officers called for back-up, Johnson and his cohorts left the scene and walked down Lincoln Place, the street on which the motel was located.

Ten additional officers arrived at the motel, responding to the call for back-up. While the police were discussing the events that had transpired, gunshots were fired at them from the direction in which Johnson and the others had walked. When the shooting ceased, the officers began searching Lincoln Place, trying to locate the gunman. During the search, one officer received an anonymous telephone call informing him that Johnson was the shooter and that he was hiding at 829 Lincoln Place. At approximately the same time that the police received the informant's call, another officer found five spent .45-caliber shell casings in the street in front of 829 Lincoln Place.

On the basis of the informant's tip and the discovered shell casings, the police surrounded 829 Lincoln Place. At least two officers posted around the house could see Johnson pacing in a back bedroom. The police located the owner of the house, Arnetta Randolph, who was not inside. Randolph's children, however, were inside, and she therefore told the police they could enter. The officers knocked, and when there was no response, Randolph gave them permission to break down her door.

The police removed Randolph's children and located Johnson, who was lying in a bed, fully-clothed and with shoes on, in the same back room where officers had previously witnessed him pacing. The police accordingly did not believe Johnson's claim that he had been asleep.

They handcuffed Johnson and searched the premises for a firearm, finding a .45-caliber handgun on the roof. Johnson was then placed under arrest and taken to the police station, where a gun powder residue test was performed on his hands. The test yielded a positive result for his right hand; ballistics matched the shell casings found in front of the house to the gun found on the roof.

On the basis of these events, and because he had previously been convicted of a felony punishable by a term of imprisonment exceeding one year, the grand jury indicted Johnson for being a felon in possession of a firearm in violation of § 922(g)(1). Johnson moved to suppress the results of the gun powder residue test, arguing that he was arrested solely on the basis of an anonymous informant's tip and therefore that the arrest was unlawful because it was made without probable cause. He contended that the results of the residue test, as "fruit of the poisonous tree," were accordingly inadmissible.

The court denied the motion to suppress. The jury found Johnson guilty as charged, and the court sentenced him to 120 months in prison, the maximum allowed by statute for a conviction under § 922(g)(1).

II.

On appeal, Johnson renews his Fourth Amendment objection to the admission of the results of the gun powder residue test, contending that the court committed reversible error by denying his motion to suppress. "In reviewing the denial of a motion to suppress, we employ a two-tiered standard, examining the factual findings of the district court for clear error, and its ultimate conclusion as to the constitutionality of the law enforcement actions *de novo*." *United States v. Navarro*, 169 F.3d 228, 231 (5th Cir. 1999).

Incident to a lawful arrest, "it is entirely

reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction." *Chimel v. California*, 395 U.S. 752, 763 (1969). Because the presence of gun powder on his hands was relevant evidence that Johnson (or merely time) could have eventually removed or destroyed, if his arrest was valid, the performance of the gun powder residue test was lawful, and the admission of the results at trial was proper.[1]

A warrantless arrest is lawful if "at the moment the arrest was made, the officers had probable cause to make it—[if] at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91 (1964). Johnson contends that at the time police entered 829 Lincoln Place and detained him, "no one had seen him commit an unlawful act." He argues that when he was handcuffed, the only evidence the police possessed that linked him to the shooting was the anonymous informant's tip. He asserts that such a tip, standing by itself, is insufficient to establish probable cause.

In arguing that the informant's tip was uncorroborated and that the tip provided the sole basis for his arrest, Johnson demonstrates a complete misunderstanding of the events leading up to and surrounding his arrest. Before entering 829 Lincoln Place, the police had in fact obtained two pieces of evidence that corroborated the information given by the anonymous caller regarding the identity and location of the shooter: (1) An officer had discovered spent shell casings outside of the house in which the informant said Johnson was hiding; and (2) officers had observed Johnson pacing in a back room of the same house. Furthermore, before the arrest, the police discovered a handgun on the roof of the house where they had found and detained Johnson.[2]

---

[1] *See Cupp v. Murphy*, 412 U.S. 291, 296-96 (1973) (stating that pursuant to *Chimel*, it is constitutionally permissible to take fingernail samples from an individual under lawful arrest); *see also United States v. Love*, 482 F.2d 213, 216 (5th Cir. 1973) (explaining that the "fact [that] [a]ppellant was legally under arrest at the time his palmprint exemplar was taken removes the first level of potential Fourth Amendment infringement").

[2] In his brief, Johnson implies, but does not argue directly, that he was under arrest as of the moment when the police located and handcuffed him at 829 Lincoln Place, and he therefore implicitly contends that the probable cause requirement was triggered prior to the discovery of the gun. Even if he were correct on this point, the police had obtained evidence sufficient to establish probable cause before they handcuffed him and commenced the search of the premises that led them to the gun (a search that presents no Fourth Amendment problem because Johnson is neither an owner nor a resident of 829 Lincoln Place).

We disagree, however, with Johnson's contention regarding the timing of his arrest. In *United States v. Sanders*, 994 F.2d 200, 206-07 (5th Cir. 1993), we held that "handcuffing a suspect . . . do[es] not automatically convert an investigatory detention into an arrest requiring probable cause." Where "reasonable under the circumstances," police "may handcuff a suspect during an investigatory detention without exceeding the limits of such a detention." *Id*. at 205, 206.

Given that Johnson had entered, without permission, a house in which children were present, and in light of the abusive conduct to which the police had been subjected that night, it was reason-
(continued...)

3

Taken together, this evidence was more than sufficient to establish probable cause for Johnson's arrest. Accordingly, the arrest, and the gun powder residue test performed incident thereto, were lawful. The district court did not err in denying the motion to suppress.

### III.

Section 2K2.1(c)(1)(A) of the United States Sentencing Guidelines provides that

> [i]f the defendant used or possessed any firearm or ammunition in connection with the commission or attempted commission of another offense . . ., apply § 2X1.1 (Attempt, Solicitation, or Conspiracy) in respect to that other offense, if the resulting offense level is greater than that determined [on the basis of § 2K2.1(a) and (b)].

Section 2X1.1 states that the base level for an attempt is

> [t]he base offense level from the guideline for the substantive offense, plus any adjustments from such guideline for any intended offense conduct that can be established with reasonable certainty.

Because evidence submitted at trial indicated that Johnson used the firearm he was convicted of possessing in violation of § 922-(g)(1) to shoot at law enforcement officers, the presentence report ("PSR") cross-referenced to attempted murder (U.S.S.G. § 2A2.1) and concluded as follows:

Section 2A2.1(a) provides a base offense level of 28 if the object of the offense would have constituted first degree murder. The offense conduct section establishes that the object of the offense would have constituted first degree murder. Because the base level of 28 for attempted murder exceeds the offense level calculation under 2K2.1(a) and (b), the guideline calculations derived from 2A2.1 will be utilized.

The PSR recommended increasing the base offense level of 28 by three levels pursuant to U.S.S.G. § 3.A.1.2(b)(1) because Johnson had assaulted persons he knew to be law enforcement officers. Using a base offense level of 31 and a category III criminal history on account of Johnson's prior convictions, the PSR calculated a guidelines range of 135-168 months.

The court took the guidelines range into consideration and sentenced Johnson to 120 months in prison, the maximum allowed by statute for a conviction under 18 U.S.C. § 922(g)(1). *See* 18 U.S.C. § 924(a)(2). Johnson objected and renews on appeal his contention that the court erred in imposing the 120-month sentence by relying on the guidelines and by taking into account facts not proven to a jury, in violation of *Booker*.

Johnson appears to be confused about what *Booker* requires. As we stated in *United States v. Mares*, 402 F.3d 511, 518 (5th Cir.), *cert. denied*, 126 S. Ct. 43 (2005), "[i]t was the mandatory aspect of th[e] sentencing regime [under the Guidelines] that the Court concluded violated the Sixth Amendment's requirement of a jury trial." Accordingly, Justice Breyer's remedial opinion "severed and excised" the sections of the Sentencing Reform Act of 1984 that made the Guidelines mandatory and set forth standards of review on appeal. *Booker*, 543 U.S. at 258-60. Post-

---

[2](...continued)
able for the police to handcuff Johnson while they continued their investigation. Johnson was arrested when, after discovering the gun, the police decided to take him to the station.

*Booker*, we continue to review a district court's interpretation and application of the guidelines *de novo*, *see United States v. Villegas*, 404 F.3d 355, 359 (5th Cir. 2005), and ultimately review sentences for "unreasonableness," *Booker,* 543 U.S. at 261.

Johnson was convicted and sentenced after *Booker* was decided and therefore was not subjected to a mandatory sentencing regime. The court's use of the guidelines as advisory in sentencing Johnson was entirely appropriate because, under *Booker*, to reach a reasonable sentence "the . . . court remains under a duty pursuant to [18 U.S.C.] § 3553(a) to 'consider' numerous factors including" the guidelines. *Mares*, 402 F.3d at 519.

> This duty to "consider" the Guidelines will ordinarily require the sentencing judge to determine the applicable Guidelines range even though the judge is not required to sentence within that range. The Guideline range should be determined in the same manner as before *Booker/Fanfan*. Relatedly, *Booker* contemplates that, with the mandatory use of the Guidelines excised, the Sixth Amendment will not impede a sentencing judge from finding all facts relevant to sentencing. The sentencing judge is entitled to find by a preponderance of the evidence all the facts relevant to the determination of a Guideline sentencing range and all facts relevant to the determination of a non-Guidelines sentence.

*Id*. (internal citations omitted). The court's consideration of the recommended guidelines range was not in error, because such consideration is mandated by *Booker* and *Mares*, even where calculation of the appropriate range requires the court to take into account facts not proven to a jury.

Turning to the more particular question of whether Johnson's 120-month sentence is reasonable, we stated in *Mares* that

> [i]f the sentencing judge exercises her discretion to impose a sentence within a properly calculated Guideline range, in our reasonableness review we will infer that the judge has considered all the factors for a fair sentence set forth in the Guidelines. Given the deference due the sentencing judge's discretion under the *Booker/Fanfan* regime, it will be rare for a reviewing court to say such a sentence is "unreasonable."

*Id*. Johnson does not contend that the PSR misapplied the guidelines or miscalculated the appropriate guidelines range. Therefore, the recommended 135-168 month guidelines range was properly calculated.

Because the maximum sentence statutorily allowed for a conviction under § 922(g)(1) fell below the bottom of the range, the court determined that the statutory maximum constituted an appropriate sentence. That sentence is reasonable, because where the statutory maximum is lower than a properly-calculated guidelines range, a statutory maximum sentence is functionally equivalent to a sentence within the guidelines. In *Mares*, we adopted a presumption of reasonableness for guidelines sentences, and we now apply the same presumption to statutory maximum sentences where that maximum falls below the appropriate guidelines range.[3]

The judgment of conviction and sentence is

---

[3] In adopting this presumption, we join the Eighth Circuit. *See United States v. Shafer*, 438 F.3d 1225, ____, 2006 WL 453200, at *1 (8th Cir. Feb. 27, 2006).

5

AFFIRMED.