STATE OF MINNESOTA

IN SUPREME COURT

A13-1245

Court of Appeals                                                    Gildea, C.J.
                                          Dissenting, Page and Stras, JJ.

State of Minnesota,

                  Respondent,

vs.                                                  Filed:  February 11, 2015
                                               Office of Appellate Courts
William Robert Bernard, Jr.,

                  Appellant.
                    _____

Lori Swanson, Attorney General, Saint Paul, Minnesota; and

James C. Backstrom, Dakota County Attorney, Tori K. Stewart, Assistant County
Attorney, Hastings, Minnesota, for respondent.

Jeffrey S. Sheridan, Strandemo, Sheridan & Dulas, P.A., Eagan, Minnesota; and

Steven T. Grimshaw, Minneapolis, Minnesota, for appellant.

Charles A. Ramsay, Daniel J. Koewler, Ramsay Law Firm, P.L.L.C., Roseville,
Minnesota, for amicus curiae Minnesota Society for Criminal Justice.

Teresa J. Nelson, American Civil Liberties Union of Minnesota, Saint Paul, Minnesota;
and

Howard Bass, Bass Law Firm, PLLC, Burnsville, Minnesota; and

Nicole Moen, Fredrikson & Byron, P.A., Minneapolis, Minnesota, for amicus curiae
American Civil Liberties Union of Minnesota.

William A. Lemons, Minnesota County Attorneys Association, Saint Paul, Minnesota,
for amicus curiae Minnesota County of Attorneys Association.
                    _____

1

1.     Because a warrantless search of appellant's breath would have been constitutional as a search incident to a valid arrest, charging appellant with violating Minn. Stat. § 169A.20, subd. 2 (2014), for refusing to take a breathalyzer in this circumstance does not implicate a fundamental right.

2.     Because Minn. Stat. § 169A.20, subd. 2, is a reasonable means to a permissive object, it does not violate appellant's right to due process under the United States or Minnesota Constitutions.

Affirmed.

## O P I N I O N

GILDEA, Chief Justice.

Minnesota law makes it a crime for a driver to refuse a request to take a chemical test to detect the presence of alcohol if certain conditions are met, including that the driver has been validly arrested for driving while impaired.  Minn. Stat. § 169A.20, subd. 2 (2014).  The question presented in this case is whether Minn. Stat. § 169A.20, subd. 2 ("test refusal statute"), violates appellant William Robert Bernard's right to due process under the United States or Minnesota Constitutions by criminalizing his refusal to consent to an unconstitutional search.  The district court held the test refusal statute was unconstitutional as applied to Bernard, but the court of appeals reversed.  Because we conclude that the breath test the police asked Bernard to take would have been constitutional as a search incident to a valid arrest, and as a result, charging Bernard with

2

criminal test refusal does not implicate a fundamental right, and that the test refusal statute is a reasonable means to a permissive object, we affirm.

This case arises from a report that police received on August 5, 2012, that three intoxicated men were attempting to get a boat out of the water at a boat launch in South Saint Paul. When police arrived at the boat launch, a witness told the officers that the men's truck became stuck in the river while they were trying to pull their boat out of the water. The witness also said that the driver of the truck was in his underwear. The officers approached the three men and saw that the truck's axle was hanging over the edge of the pavement. One of the men, appellant William Robert Bernard, was in his underwear. The officers could smell a strong odor of alcohol coming from the group. Bernard admitted to police that he had been drinking, but he and the other men denied driving the truck. Several additional witnesses identified Bernard as the driver and described him stumbling from the boat to the truck. As the officers questioned Bernard, they noted that his breath smelled of alcohol, he had bloodshot, watery eyes, and he was holding the keys to the truck. Bernard refused to perform field sobriety tests.

The officers arrested Bernard on suspicion of driving while impaired ("DWI") and took him to the South Saint Paul police station. The officers read Bernard the Minnesota Implied Consent Advisory as required by Minn. Stat. § 169A.51, subd. 2 (2014). Specifically, police advised Bernard that Minnesota law required him to take a chemical test, that refusal to take a test was a crime, and that he had a right to consult with an attorney so long as there was not an unreasonable delay in the administration of the test. Police also gave Bernard an opportunity to contact an attorney. Bernard called

3

his mother instead. After the call to his mother, Bernard told the officers he did not need any more time and refused to take a breath test.

The State charged Bernard with two counts of first-degree test refusal, Minn. Stat. §§ 169A.20, subd. 2, 169A.24 (2014).[1] Bernard filed a motion to dismiss, arguing that the test refusal statute violated due process because the statute makes it a crime to refuse an unreasonable, warrantless search of a driver's breath. The district court ruled that the test refusal statute was not unconstitutional on its face but dismissed the charges after concluding that the police lacked a lawful basis to search Bernard without a warrant. The court of appeals reversed, holding that prosecuting Bernard for refusal to take a breath test did not violate his due process rights because the facts of the case established that the officers had probable cause and could have secured a warrant to search Bernard's breath. We granted review.

I.

The test refusal statute, Minn. Stat. § 169A.20, subd. 2, makes it a crime to refuse a chemical test administered to detect the presence of alcohol in certain circumstances. *Id.* ("It is a crime for any person to refuse to submit to a chemical test of the person's blood, breath, or urine under section 169A.51 (chemical tests for intoxication) or 169A.52 (test refusal or failure; revocation of license)."). These circumstances include

---

[1] A person is guilty of first-degree driving while impaired or criminal test refusal if that person "commits the violation within ten years of the first of three or more qualified prior impaired driving incidents." Minn. Stat. § 169A.24, subd. 1(1). A "qualified prior impaired driving incident" includes prior impaired driving convictions. Minn. Stat. § 169A.03, subd. 22 (2014). Bernard has four impaired driving convictions since 2006.

4

when an officer has probable cause to believe the person was driving, operating, or in physical control of a motor vehicle while under the influence of alcohol and the police have read the person the implied-consent advisory. *See* Minn. Stat. § 169A.51, subds. 1-2.

Bernard argues that Minnesota's test refusal statute, as applied to him, violates his right to substantive due process because it criminalizes his Fourth Amendment right to refuse an unconstitutional, warrantless search.[2] The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."[3] U.S. Const. amend. IV. The "ultimate measure" of a permissible government search under the Fourth Amendment is reasonableness. *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 652 (1995). Because Bernard bases

---

[2] Bernard's brief states that "the district court should have found the statute unconstitutional on its face." But Bernard makes no argument in his brief explaining how the statute is unconstitutional in all applications. *United States v. Salerno*, 481 U.S. 739, 745 (1987) (stating that a facial challenge is "the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid"). Instead, Bernard's brief is devoted to arguing that Minnesota's test refusal law is unconstitutional as applied to him in this case. We therefore treat Bernard's appeal as an as-applied challenge. *See Melina v. Chaplin*, 327 N.W.2d 19, 20 (Minn. 1982) (stating that an issue "not argued in the briefs" is waived). In addition, counsel for Bernard seemed to make a broader argument at the hearing on this matter, asserting that the statute is unconstitutional on its face because there is not a categorical exception to make all warrantless breath tests under the statute constitutional. We will not consider this argument because Bernard did not raise it in his brief. *State v. Morrow*, 834 N.W.2d 715, 724 n.4 (Minn. 2013) (stating that an issue argued at oral argument, but not raised in the briefs is waived).

[3] Bernard also references the Minnesota Constitution's prohibition against unreasonable searches and seizures. *See* Minn. Const. art. I, § 10. Bernard, however, is not asking us to extend broader search and seizure protection under the Minnesota Constitution than what the Fourth Amendment affords.

his due process argument on a Fourth Amendment violation, we turn first to the question of whether a warrantless search of Bernard's breath would have been constitutional under the Fourth Amendment.

## A.

The court of appeals held that the criminal charges against Bernard for refusing the breath test were constitutional under the Fourth Amendment because the officer had probable cause to believe that Bernard was driving under the influence and the officer could have sought and received a warrant based on that evidence. *State v. Bernard*, 844 N.W.2d 41, 47 (Minn. App. 2014). The court did not find an exception to the warrant requirement for the search of Bernard's breath. *Id.* at 45–46. Instead, it concluded that probable cause sufficient to support a warrant was enough to support the criminal test-refusal charge. *Id.*

The court of appeals' analysis is contrary to basic principles of Fourth Amendment law. A warrantless search is generally unreasonable, unless it falls into one of the recognized exceptions to the warrant requirement. *State v. Flowers*, 734 N.W.2d 239, 248 (Minn. 2007). On several occasions, the U.S. Supreme Court has explicitly rejected an exception to the warrant requirement based upon probable cause alone. *See, e.g.*, *Katz v. United States*, 389 U.S. 347, 356–57 (1967); *Beck v. Ohio*, 379 U.S. 89, 96 (1964). We have also recognized that there is no probable cause exception to the warrant requirement. *See State v. Ortega*, 770 N.W.2d 145, 149 n.2 (Minn. 2009). Consistent with this precedent, we refuse to embrace the rule the court of appeals applied in this case.

6

Although the court of appeals' reasoning does not provide a basis for a constitutional search, the State advances several other theories for why a search of Bernard's breath would have been constitutional. One such argument is that police could have conducted a warrantless search of Bernard's breath as a search incident to a valid arrest. Bernard contends that because there is nothing he can do to destroy the evidence of alcohol concentration in his body, the search-incident-to-arrest exception does not apply to a search of his breath under *Arizona v. Gant*, 556 U.S. 332 (2009), and *Missouri v. McNeely*, ___ U.S. ___, 133 S. Ct. 1552 (2013).

A search incident to a lawful arrest is a well-recognized exception to the warrant requirement under the Fourth Amendment. *Gant*, 556 U.S. at 338; *see also Weeks v. United States*, 232 U.S. 383, 392 (1914) (explaining that the right "to search the person of the accused when legally arrested to discover and seize the fruits or evidences of crime" has been "uniformly maintained" in many cases "under English and American law"), *overruled on other grounds by Elkins v. United States*, 364 U.S. 206 (1960). Under this exception, the police are authorized to conduct a "full search of the person" who has been lawfully arrested. *United States v. Robinson*, 414 U.S. 218, 235 (1973). Our court has allowed searches of the body beyond a pat down of those police have lawfully arrested. For example, we have held that the warrantless inspection of an arrested man's penis was a valid search incident to arrest, noting that someone "lawfully subjected to a custodial arrest retains no significant Fourth Amendment interest in the privacy of his person." *State v. Riley*, 303 Minn. 251, 254, 226 N.W.2d 907, 909 (1975). We have also upheld the taking of fingerprints and photographs of someone who has been arrested. *State v.*

*Bonner*, 275 Minn. 280, 287, 146 N.W.2d 770, 775 (1966); *see also State v. Emerson*, 266 Minn. 217, 221, 123 N.W.2d 382, 385 (1963) (noting that subjecting an arrested man to photographs, X-rays, and a medical examination did not violate his due process rights).

Taking a sample of an arrestee's breath is not materially different from the warrantless searches upheld in these cases.[4] Based on this authority, we conclude that a warrantless breath test of Bernard would not have violated the Fourth Amendment because it is a search incident to Bernard's valid arrest.

Our conclusion that a warrantless breath test does not violate the Fourth Amendment because it falls under the search-incident-to-a-valid-arrest exception is consistent with decisions from other courts. *See, e.g.*, *United States v. Reid*, 929 F.2d 990, 994 (4th Cir. 1991) (holding that breathalyzer tests were reasonable searches under the Fourth Amendment because they were searches incident to lawful arrests); *Burnett v. Municipality of Anchorage*, 806 F.2d 1447, 1450 (9th Cir. 1986) ("It is clear then that the breathalyzer examination in question is an appropriate and reasonable search incident to

---

[4] The dissent argues that our holding "fundamentally departs from longstanding Fourth Amendment principles." A search of an arrestee's breath, however, is not a departure from search-incident-to-arrest exception case law. Courts have upheld a variety of searches that included the removal of biological material and searches within the arrestee's body as valid searches incident to arrest. *See United States v. D'Amico*, 408 F.2d 331, 332-33 (2d Cir. 1969) (upholding the warrantless seizure of a few strands of the arrestee's hair); *Espinoza v. United States*, 278 F.2d 802, 804 (5th Cir. 1960) (upholding a forcible search of an arrestee's mouth for narcotics). Courts have also upheld chemical testing conducted on parts of a defendant's body as a search incident to arrest. *See United States v. Johnson*, 445 F.3d 793, 795–96 (5th Cir. 2006) (upholding gunpowder residue testing done on defendant's hands as a search incident to arrest); *Jones v. State*, 74 A.3d 802, 812-13 (Md. Ct. Spec. App. 2013) (same and citing other cases so holding); *State v. Riley*, 500 S.E.2d 524, 533 (W. Va. 1997) (same); *Sen v. State*, 301 P.3d 106, 117–18 (Wyo. 2013) (same).

arrest which appellants have no constitutional right to refuse."); *Byrd v. Clark*, 783 F.2d 1002, 1005 (11th Cir. 1986) (holding that "officers would have been justified in conducting a [breath] search" under the search-incident-to-arrest exception); *Wing v. State*, 268 P.3d 1105, 1110 (Alaska Ct. App. 2012) (holding that a breath test was a valid search incident to arrest); *State v. Dowdy*, 332 S.W.3d 868, 870 (Mo. Ct. App. 2011) (same); *State v. Hill*, No. 2008-CA-0011, 2009 WL 1485026, at *5 (Ohio Ct. App. May 22, 2009) (same); *Commonwealth, Dep't of Transp. v. McFarren*, 525 A.2d 1185, 1188 (Pa. 1987) (same).[5] Indeed, our research has not revealed a single case anywhere in the country that holds that a warrantless breath test is not permissible under the search-incident-to-a-valid-arrest exception.[6]

---

[5] The dissent claims that our conclusion is unprecedented because our holding authorizes the collection of biological material from inside the defendant's body as a lawful search incident to arrest. The dissent is mistaken. As the cases we cited above indicate, courts for nearly 30 years have found a breath test is a lawful search incident to arrest. The dissent does not, and indeed cannot, cite any Supreme Court case holding that a search incident to arrest does not apply to biological material.

[6] The dissent is unable to find any contrary authority. Other courts, including the Texas Court of Criminal Appeals in the case cited by the dissent, have held that a blood test cannot be justified by the search-incident-to-arrest exception. *See, e.g.*, *State v. Baker*, 502 A.2d 489, 492–93 (Me. 1985) (rejecting the search-incident-to-arrest exception as justifying a warrantless blood draw, but upholding the test under the exigent circumstances exception); *State v. Stern*, 846 A.2d 64, 68 (N.H. 2004) (suggesting that exigent circumstances is the only exception that can justify a warrantless blood draw); *State v. Welch*, 342 S.E.2d 789, 794 (N.C. 1986) (same); *State v. Villarreal*, ___ S.W.3d ___, 2014 WL 6734178, at *18 (Tex. Crim. App. Nov. 26, 2014) (holding that the search-incident-to-arrest exception cannot justify a warrantless blood draw). Although not in the context of driving while impaired, we have also determined that a warrantless blood sample search was unconstitutional. *State v. Campbell*, 281 Minn. 1, 10, 161 N.W.2d 47, 54 (1968) ("[A]bsent unusual circumstances, an intrusion upon the body of a citizen should properly be made only by authority of a warrant issued by a magistrate, for it is a

(Footnote continued on next page.)

B.

Bernard and the dissent argue, however, that the Supreme Court has been retracting the scope of searches that are constitutional under the search-incident-to-arrest exception. To support this argument, Bernard relies on *Arizona v. Gant,* 556 U.S. 332. *Gant*, however, did not address a search of a person; *Gant* involved the search of the *area* from which the defendant was arrested, specifically, the defendant's automobile. 556 U.S. at 336. As Bernard notes, the Court discussed that the search-incident-to-a-valid-arrest exception derives from concerns over officer safety and a desire to preserve evidence. *Id*. at 338. Because the police had secured the defendant in the back of a squad car, these concerns were nonexistent in *Gant* and the Court held that the warrantless search of the defendant's automobile did not fall under the search-incident-to-arrest exception. *Id*. at 351.

Similar to *Gant*, Bernard argues that the State in this case cannot show that a search of his breath was related to officer safety or concerns that he would destroy

(Footnote continued from previous page.)
search and seizure within the limitations of the Fourth Amendment."). In this case, however, the officers did not ask Bernard to submit to a blood test. Therefore, the question of a blood or urine test incident to arrest is not before us, and we express no opinion as to whether a blood or urine test of a suspected drunk driver could be justified as a search incident to arrest. The differences between a blood test and a breath test are material, and not the least of those differences is the less-invasive nature of breath testing. *See Skinner v. Ry. Labor Execs. Ass'n*, 489 U.S. 602, 626 (1989) (stating that, unlike blood tests, breath tests do not "implicate[] significant privacy concerns").

10

evidence. That may be true,[7] but it does not compel the conclusion that the search-incident-to-arrest exception does not apply here. This is so because there are two distinct types of searches that fall within the exception. *Robinson*, 414 U.S. at 224. First, police may conduct a search "of the *person* of an arrestee by virtue of the lawful arrest." *Id.* Second, a search may be made of the area within the immediate control of the arrestee. *Id.* It is the first type of search—the search of the arrestee's person—that is relevant here.

There is no question that the Court has required either a concern for officer safety or a concern over the preservation of evidence to support the constitutionality of a warrantless search of the area where the defendant was arrested or a search of items near the defendant. But the Court has not applied these concerns as a limitation on the warrantless search of the body of a person validly arrested. A brief review of the Court's cases illustrates this distinction.

In *Chimel v. California*, the U.S. Supreme Court held that following an arrest, a police officer may search the person of the arrestee *and* the area within his or her immediate control to remove weapons and to seize evidence. 395 U.S. 752, 762–63 (1969). The Court explained that the search promoted officer safety and prevented the destruction or concealment of evidence. *Id.* at 763. A search of the arrestee's entire home, however, was not justified as a search incident to arrest. *Id.*

A few years later, in *United States v. Robinson*, the Court clarified the justification for the search of *a person* under the search-incident-to-arrest exception. In *Robinson*, a

---

[7] The State makes no argument in this case that the breath test was necessary to protect the safety of the officers or jailers from an intoxicated arrestee.

11

police officer arrested the defendant for driving with a revoked license and subsequently performed a patdown search. 414 U.S. at 220-23. The officer pulled an unidentified object from the defendant's pocket and discovered that it was a cigarette package. *Id.* at 223. Upon opening the package, the officer found 14 capsules of heroin. *Id.* The Court held that the police lawfully discovered the heroin as part of a search incident to arrest. *Id.* at 236.

Through its holding, the U.S. Supreme Court overruled the analysis from the United States Court of Appeals for the District of Columbia Circuit. *Id.* at 237. The court of appeals concluded that the search-incident-to-arrest exception did not apply. *United States v. Robinson*, 471 F.2d 1082, 1108 (D.C. Cir. 1972). The exception did not apply because the police did not have reasonable grounds to believe that the defendant, who police arrested for driving after license revocation, would have any additional evidence of the crime on his person, and because there was no evidence that police were concerned for their safety when they searched the defendant. *Id.* at 1094, 1098 (D.C. Cir. 1972). The Supreme Court termed these limitations, within the context of a search of the person of a validly arrested defendant, as "novel" and rejected them. *Robinson*, 441 U.S. at 229. Rather than constricted by the limitations the appellate court had adopted, the Supreme Court referred to the police's "authority" to search an arrested person as "unqualified." *Id.* The Court held that "in the case of a lawful custodial arrest *a full search of the person* is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment." *Id.* at 235 (emphasis added). In other words, in *Robinson*, the Court characterized a warrantless

12

search of a person as categorically reasonable under the Fourth Amendment as a search incident to that person's valid arrest. *See McNeely*, ___ U.S. at ___, 133 S. Ct. at 1559 n.3 (citing *Robinson*).

Subsequent cases have addressed and limited the second type of search under the search-incident-to-arrest exception, a search of the area or things within the immediate control of the arrestee, but they have not narrowed the exception with respect to a search of the arrestee's body. *See Gant*, 556 U.S. at 351 (holding that the "[p]olice may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search"); *United States v. Chadwick*, 433 U.S. 1, 14-15 (1977) (holding that a locked footlocker seized at the time of a defendant's arrest could not be justified as a search of the area within the arrestee's immediate control "if the 'search is remote in time or place from the arrest' " or if the police have exclusive control of the property and "there is no longer any danger that the arrestee might gain access to the property" (quoting *Preston v. United States*, 376 U.S. 364, 367 (1964)), *abrogated on other grounds by California v. Acevedo*, 500 U.S. 565 (1991).

Just last term, in *Riley v. California*, the Court addressed whether police could search a "particular category of effects"—digital data found within a cell phone seized during an arrest—without a warrant under the search-incident-to-arrest exception. ___ U.S. ___, 134 S. Ct. 2473, 2485 (2014). In concluding that the police could not search data on the cell phone as a search incident to arrest, the Court reaffirmed "*Robinson*'s admonition that searches of a person incident to arrest . . . are reasonable

13

regardless of 'the probability in a particular arrest situation that weapons or evidence would in fact be found.' " *Id.* at ___, 134 S. Ct. at 2485 (quoting *Robinson*, 414 U.S. at 235). In a custodial arrest situation, those concerns are always present and do not need to be specifically identified or proven to justify a search. *Id.* at ___, 134 S. Ct. at 2484-85. Therefore, far from overruling or narrowing *Robinson*, the Court recognized again *Robinson*'s "categorical rule," which allows a search of the person of an arrestee justified only by the custodial arrest itself, and simply chose not to extend that categorical exception to digital data found within a cellphone. *Id.* at ___, 134 S. Ct. at 2484.

The dissent reads *Riley* much differently than we do. It claims the Supreme Court in *Riley* "confirmed that when it refers to a search of a person incident to arrest, as in *Robinson*, it is talking about personal property—that is, evidence—found *on* a person." As support, the dissent cites to *Riley's* discussion of *Robinson*, 414 U.S. at 235, and *Chadwick*, 433 U.S. at 15. The dissent misreads *Riley*.[8]

---

[8]     The dissent's interpretation of *Riley* makes no logical sense. Even though the Court in *Riley* reaffirmed *Robinson*'s holding that "searches of a person" are lawful as part of a search incident to arrest without any additional showing by the government, *see Riley*, __ U.S. at __, 134 S. Ct. at 2485, the dissent asserts that the phrase "searches of a person" actually refers to personal property found on a person. We think that if the Supreme Court intended the phrase "searches of a person" to exclude searching the actual person, i.e., their body, and to only include searching personal property found on a person, the Court would have clearly said so. We are also hard pressed to understand how the police can even search personal property found on a person without first searching the actual person.

The dissent also claims that because the Supreme Court in *Riley* did not extend its holding from *Robinson* regarding the type of objects found on a person that may be categorically searched incident to arrest to digital content found within a cell phone, "the only logical conclusion is that the removal of breath (or blood or urine) from the body to

(Footnote continued on next page.)

14

In discussing these two cases in *Riley*, the Court explained that in *Robinson*, "the Court did not draw a line between a search of Robinson's person and a further examination of the cigarette pack found during that search." *Riley*, ___ U.S. at ___, 134 S. Ct. at 2484. The Court went on to explain that in *Chadwick*, it did make a distinction between a search of the person and the personal property, a footlocker that was in the exclusive control of law enforcement officers, found during that search. *Id.* at ___, 134 S. Ct. at 2484. It "clarified that this exception [requiring no additional justification for the search] was limited to 'personal property . . . immediately associated

(Footnote continued from previous page.)
discover an arrestee's blood alcohol level is not part of a search incident to arrest." We disagree. The search at issue in *Riley* was not a search of the defendant's body, like the search involved in this case, but a search of a physical object found on the defendant. In addition, the search that occurs when a breath test is taken is clearly distinguishable from the search of the contents of a person's cell phone. In *Riley*, the Court emphasized that even with the diminished expectation of privacy that comes with a custodial arrest, a search of a cell phone would be intrusive. *Riley*, ___ U.S. at ___, 134 S. Ct. at 2485. The Court noted that "[m]odern cell phones, as a category, implicate privacy concerns far beyond those implicated by the search of a cigarette pack, a wallet, or a purse" because they contain vast quantities of highly personal information about a person. *Id.* at ___, 134 S. Ct. at 2488-89. The same cannot be said for a breathalyzer test, which reveals nothing more than the level of alcohol in the arrestee's bloodstream. *See Skinner*, 489 U.S. at 625.

Finally, our conclusion that *Riley* did not limit the full body search of an arrestee authorized by *Robinson* is reinforced by other language in the opinion. The Court reiterated later in *Riley* that "we do not overlook *Robinson*'s admonition that searches of a person incident to arrest, 'while based upon the need to disarm and to discover evidence' are reasonable regardless of 'the probability in a particular arrest situation that weapons or evidence would in fact be found.' " *Riley*, ___ U.S. at ___, 134 S. Ct. at 2485 (quoting *Robinson*, 414 U.S. at 235). There would have been no need for the court to reaffirm its holding from *Robinson* regarding "searches of a person incident to arrest" if *Robinson* only authorized the search of personal property found on an arrestee. *Id.* at ___, 134 S. Ct. at 2485.

15

with the person of the arrestee.' " *Id.* at \_\_\_, 134 S. Ct. at 2484 (quoting *Chadwick*, 433 U.S. at 15). The dissent relies on this last sentence to support its interpretation of *Riley*.

When this quote is put in context, it is clear that the Court was not limiting the categorical search of an arrestee's body that may be performed as a search incident to arrest. Instead, the Court was explaining that *Chadwick* had limited the *type of property* that may be categorically searched as part of a search incident to arrest to property immediately associated with the arrestee. Moreover, because the searches being challenged in both *Riley* and *Chadwick* were not searches of the arrestee's body itself, it is hard to see how those cases can be read to have placed restrictions on such a search.

In short, we reject as unpersuasive both Bernard's and the dissent's arguments that *Gant* and *Riley* require us to conclude that the search-incident-to-arrest exception does not apply to the warrantless search of his breath.

Bernard also argues that the search-incident-to-arrest exception cannot apply to a breath test under *Missouri v. McNeely*, \_\_\_ U.S. \_\_\_, 133 S. Ct. 1552 (2013). The U.S. Supreme Court in *McNeely*, however, addressed only the exigent-circumstances exception to the warrant requirement. *Id.* at \_\_\_, 133 S. Ct. at 1556 (addressing whether the "natural metabolization of alcohol in the bloodstream presents a *per se* exigency that justifies an exception to the Fourth Amendment's warrant requirement for nonconsensual blood testing in all drunk-driving cases"). The government did not raise the search-

16

incident-to-arrest exception in its argument to the Supreme Court.[9]  *See* Brief for Petitioner, *Missouri v. McNeely*, ___ U.S. ___, 133 S. Ct. 1552 (2013) (No. 11-1425).  In fact, *McNeely* only mentioned the search-incident-to-arrest exception by contrasting it with the exigent-circumstances exception to the warrant requirement, noting that unlike the exigent-circumstances exception, the search-incident-to-arrest exception is categorical and does not require a case-by-case assessment of the circumstances.[10]  *McNeely*, ___ U.S. at ___, 133 S. Ct. at 1559 n.3.  Therefore, the Supreme Court's decision in *McNeely* does not foreclose our decision regarding the search-incident-to-arrest exception to the warrant requirement.

Based on our analysis above, the warrantless search of Bernard's breath would have been reasonable as a search incident to his valid arrest.  The undisputed facts of this case establish that the police had probable cause to arrest Bernard for DWI.  Indeed,

---

[9]    A group of state attorneys general did argue that the search in *McNeely* was permissible under the search-incident-to-arrest exception.  Brief for Delaware, et al. as Amici Curiae Supporting Petitioner at 7-20, *Missouri v. McNeely*, ___ U.S. ___, 133 S. Ct. 1552 (2013) (No. 11-1425).  The U.S. Supreme Court, however, does not consider arguments "not raised by the parties or passed on by the lower courts."  *F.T.C. v. Phoebe Putney Health Sys., Inc.*, ___ U.S. ___, 133 S. Ct. 1003, 1010 n.4 (2013).

[10]    Specifically, the Supreme Court recognized that "searches of a person incident to a lawful arrest" are part of a "limited class of traditional exceptions to the warrant requirement that apply categorically and thus do not require an assessment of whether the policy justifications underlying the exception . . . are implicated in a particular case."  *McNeely*, ___ U.S. at ___, 133 S. Ct. at 1559 n.3.  The dissent is therefore mistaken that it "strains credulity to suppose" that the search-incident-to-arrest exception would apply to a future warrantless breath test case because the exception "turns on the same rationale regarding the preservation of evidence that the Supreme Court explicitly rejected in *McNeely*."  The Supreme Court reaffirmed in *McNeely* that a search of a person incident to arrest is categorically justified not by a specific rationale for the preservation of evidence, but by a lawful arrest.

17

Bernard does not dispute that the police validly arrested him before asking him to submit to a breathalyzer test. The breath test was a search of Bernard's person that would have been no more intrusive than the myriad of other searches of the body that we and other courts have upheld as searches incident to a valid arrest. *See, e.g.*, *Riley*, 303 Minn. at 254, 226 N.W.2d at 909. We therefore conclude that a breath test is a search of the arrestee's person and is justified by virtue of the lawful arrest itself. As a result, we hold that a warrantless breath test of Bernard would have been constitutional under the search-incident-to-arrest exception to the Fourth Amendment's warrant requirement.[11]

---

[11] The dissent argues that our holding ignores the U.S. Supreme Court's narrowing of the search-incident-to-arrest exception. The Supreme Court, however, has not been narrowing the search-incident-to-arrest exception as it applies to searches of the arrestee's person. Instead, the Court has been clarifying the exception's application to a search of the area or things within the arrestee's immediate control. *See Riley*, ___ U.S. at ___ , 134 S. Ct. at 2484-85 (holding that searching the data on a cell phone was not a search incident to arrest, but recognizing a categorical exception justifying searches of an arrestee's person); *Gant*, 556 U.S. at 339 (discussing searches incident to arrest in the context of a search of an automobile).

Further, despite narrowing the scope of the exception in terms of searches other than of the defendant's body, the U.S. Supreme Court has not overruled *Robinson*, and "only the Supreme Court may overrule one of its own decisions." *State v. Brist*, 812 N.W.2d 51, 56 (Minn. 2012) (citing *Thurston Motor Lines, Inc. v. Jordan K. Rand, Ltd.*, 460 U.S. 533, 535 (1983)). The Supreme Court has stated, "If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, [courts] should follow the case which directly controls . . . ." *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989). *Robinson*'s discussion of searches of the person incident to arrest is on point in this case. The Supreme Court has not overruled *Robinson*, and so we will follow it. Under *Robinson*, a search of Bernard's breath incident to his arrest is a permissible search by virtue of his lawful arrest.

II.

We turn next to Bernard's substantive due process challenge to the test refusal statute. The due process clauses of the United States and Minnesota Constitutions "prohibit 'certain arbitrary, wrongful government actions, regardless of the fairness of the procedures used to implement them.' " *Boutin v. LaFleur*, 591 N.W.2d 711, 716 (Minn. 1999) (quoting *Zinermon v. Burch*, 494 U.S. 113, 125 (1990)); *see also* U.S. Const. amends. V, XIV; Minn. Const. art. I, § 7. When assessing a due process challenge, the analysis we apply depends on whether the statute implicates a fundamental right. *Boutin*, 591 N.W.2d at 716. Having decided that the search of Bernard's breath would have been constitutional, we find no fundamental right at issue here, as Bernard does not have a fundamental right to refuse a constitutional search. *See Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997) (stating that fundamental rights for purposes of substantive due process are those rights and liberties "which are, objectively, deeply rooted in this Nation's history and tradition" and are "implicit in the concept of ordered liberty" (citations omitted) (internal quotation marks omitted)).

If a statute does not implicate a fundamental right, we assess its constitutionality using rational basis review. *See State v. Behl*, 564 N.W.2d 560, 567 (Minn. 1997). To survive a due process challenge using rational basis review, the statute must not be "arbitrary or capricious." *Id.* We will uphold the statute as long as it is "a reasonable means to a permissive object." *Id.* We review the constitutionality of statutes de novo. *State v. Henning*, 666 N.W.2d 379, 382 (Minn. 2003).

19

The object of the Minnesota Impaired Driving Code, Minn. Stat. § 169A.01 *et seq.*, is public safety. We have recognized the "severe threat" that impaired drivers pose to the public's safety. *Heddan v. Dirkswager*, 336 N.W.2d 54, 62–63 (Minn. 1983). Indeed, 30 percent of traffic deaths in Minnesota in 2013 were alcohol-related. Minn. Dep't of Pub. Safety, *Minnesota Motor Vehicle Crash Facts 2013* 39 (2014). And we have said that "the state has a compelling interest in highway safety justifying efforts to keep impaired drivers off the road." *Bendorf v. Comm'r of Pub. Safety*, 727 N.W.2d 410, 417 (Minn. 2007) (citing *Heddan*, 336 N.W.2d at 63). Securing effective chemical tests to determine whether drivers suspected of being under the influence are in fact driving while impaired is reasonably related to the government's interest in keeping impaired drivers off the road.

Encouraging drivers to submit to such tests, through criminalizing their refusal, furthers that interest. In fact, one study concludes that alcohol concentration test refusals compromise the enforcement of drunk-driving laws. Ralph K. Jones & James L. Nichols, *Breath Test Refusals and Their Effect on DWI Prosecution* 42 (2012) (concluding that "[a]s statewide refusal rates increased, overall conviction rates . . . decreased"). And another study finds that Minnesota's test refusal statute has led to a lower refusal rate and an increased conviction rate for alcohol-related offenses, including driving under the influence and test refusal. H.L. Ross, et al., *Causes and Consequences of Implied Consent Test Refusal*, 11 Alcohol, Drugs and Driving 57, 71–72 (1995).

In sum, it is rational to conclude that criminalizing the refusal to submit to a breath test relates to the State's ability to prosecute drunk drivers and keep Minnesota roads

20

safe.  We therefore hold that the test refusal statute is a reasonable means to a permissive

object and that it passes rational basis review.

      Affirmed.

D I S S E N T

PAGE, Justice, and STRAS, Justice (dissenting jointly).

We respectfully dissent. The court apparently wishes that we lived in a world without *Missouri v. McNeely*, ___ U.S. ___, 133 S. Ct. 1552 (2013), and one in which there are no limits to the search-incident-to-arrest doctrine. But we do not live in such a world. The Supreme Court of the United States has decided *McNeely* and, over the past several decades, has limited searches incident to arrest. Even though the court's opinion strikes a confident tone, the truth of the matter is that its decision is borne of obstinance, not law. The court today fundamentally departs from longstanding Fourth Amendment principles, and nullifies the warrant requirement in nearly every drunk-driving case.

I.

As justices of a state supreme court, we are bound to follow decisions of the Supreme Court of the United States on questions of federal law. U.S. Const. Art. VI. Rather than carrying out its duty, the court selectively quotes from some Supreme Court decisions and ignores others to reach a decision that is at odds with Supreme Court precedent on the scope of searches incident to arrest. Two erroneous assumptions permeate the court's analysis. First, the court assumes, without support, that biological material may be taken from *inside* a person's body as part of a search incident to arrest. Second, the court assumes, again without support, that the rationales underlying the search-incident-to-arrest exception—officer safety and preventing the destruction of evidence, *see Chimel v. California*, 395 U.S. 752, 762-63 (1969)—do not apply to

searches of a person. In the end, the court ultimately arrives at a decision that is as notable for its disregard of Supreme Court precedent as it is for its defective logic.

A.

To start with the court's first assumption, the Supreme Court has never implied, much less stated, that the search-incident-to-arrest exception extends to the forcible removal of substances from within a person's body.

The court relies almost exclusively on *United States v. Robinson*, 414 U.S. 218 (1973), a search-incident-to-arrest case that is not as expansive as the court claims. In approving the warrantless breath test that Bernard refused in this case, the court seizes upon *Robinson*'s statement that, "in the case of a lawful custodial arrest[,] a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment." *Id.* at 235. The court then insists, contrary to authority, that the Supreme Court has not subsequently "narrowed the [search-incident-to-arrest] exception with respect to a search of the arrestee's body." The court starts from the premise that the Supreme Court intended a "full search of the person" to be so broadly defined as to include the compelled removal of biological material from inside the body, and then effectively ignores everything the Supreme Court has said since *Robinson* about searches incident to arrest.

Although *Robinson*'s language is broad, it is not unlimited, and it does not support the invasive search at issue in this case. In *Robinson*, the police arrested the defendant for driving after his license had been revoked. 414 U.S. at 220-21. In accordance with standard procedures, an officer searched Robinson and found a cigarette package that

contained heroin in Robinson's coat pocket. *Id.* at 221-23. At Robinson's trial, the trial court admitted the heroin into evidence, and Robinson was convicted, largely because of the heroin found during the search incident to his arrest. *Id.* at 223. The Supreme Court held that a search of a person incident to arrest is not limited to a protective frisk for weapons, as in *Terry v. Ohio*, 392 U.S. 1 (1968), and may extend to the preservation of evidence of the particular crime for which the arrest was made. *Id.* at 234-35. Ultimately, the Supreme Court concluded that it was the "lawful arrest" itself that provided the authority to search, and that the search conducted in *Robinson* was reasonable under the Fourth Amendment. *Id.* at 235.

In the context of this case, *Robinson* is more notable for its facts than for what it said. Despite the Supreme Court's broad language, the search in *Robinson* was unremarkable. The "full search of the person" involved only a pat down and an examination of the contents of Robinson's pockets, not an invasive search to retrieve biological material from within his body. *See id.* at 222-23; *see also Illinois v. Lafayette*, 462 U.S. 640, 645 (1983) (stating that "the interests supporting a search incident to arrest would hardly justify disrobing an arrestee on the street").

Any doubt about the bounds of *Robinson* vanished after *Riley v. California*, ___ U.S. ___, 134 S. Ct. 2473 (2014), when the Supreme Court confirmed that, when it refers to a search of a person incident to arrest, as in *Robinson*, it is talking about personal property—that is, evidence—found *on* a person. In *Riley*, a case involving the digital content of cell phones, the Supreme Court reviewed the history of the search-incident-to-arrest exception. *Id.* at ___, 134 S. Ct. at 2482-84. After discussing several cases, the

Supreme Court turned its attention to *Robinson*. *Id.* at ___, 134 S. Ct. at 2483-84. It explained that, four years after *Robinson*, it "[had] clarified that [the search-incident-to-arrest] exception was limited to '*personal property* . . . immediately associated with the person of the arrestee.'" *Id.* at ___, 134 S. Ct. at 2484 (quoting *United States v. Chadwick*, 433 U.S. 1, 15 (1977) (emphasis added)); *see also Robinson*, 414 U.S. at 226 (an arresting officer may "search for and seize any evidence *on* the arrestee's person" (quoting *Chimel v. California*, 395 U.S. 752, 762-63 (1969)) (emphasis added)). The Supreme Court repeated its cautionary note about the proper scope of a search incident to arrest just four paragraphs later when it said that, "while *Robinson*'s categorical rule strikes the appropriate balance in the context of *physical objects*, neither of its rationales has much force with respect to digital content on cell phones." *Riley*, ___ U.S. at ___, 134 S. Ct. at 2484 (emphasis added); *see also id.* at ___, 134 S. Ct. at 2489 ("A conclusion that inspecting the contents of an arrestee's pockets works no substantial additional intrusion on privacy beyond the arrest itself may make sense as applied to physical items, but any extension of that reasoning to digital data has to rest on its own bottom."). Given *Riley*'s clarification that *Robinson* applies only to physical evidence found on a person's body—and not digital content found on cell phones—the only logical conclusion is that the removal of breath (or blood or urine) from the body to discover an arrestee's blood alcohol level is not part of a search incident to arrest.[1]

_____

[1]     One could point to the Supreme Court's recent decision in *Maryland v. King*, ___ U.S. ___, 133 S. Ct. 1958 (2013), as support for the warrantless breath test at issue in this case.  After all, in *King*, the Supreme Court upheld a warrantless search by which jail
(Footnote continued on next page.)

The court nevertheless reads *Robinson* as authority for conducting any search of an arrestee, even one that collects material from within a person's body. In doing so, the court fails to address two flaws in its approach. First, molecules of ethanol ($C_2H_6O$) in a person's blood are not "physical objects" in the same sense as a "crumpled up cigarette package," *see Robinson*, 414. U.S. at 223, coins, *see Chimel*, 395 U.S. at 754, or a bag of cocaine, *see Arizona v. Gant*, 556 U.S. 332, 336 (2009). It seems obvious that, similar to the digital content of a cell phone, alveolar "deep-lung" air "differ[s] in both a

---

(Footnote continued from previous page.)
officials used a buccal swab to collect DNA from an arrestee under a Maryland statute. *Id.* at ___, 133 S. Ct. at 1980. The statute, the Maryland DNA Collection Act, required officers to collect a DNA sample from arrestees charged with serious crimes, but critically, the Maryland law did not subject the collection requirement to the discretion of officers. *Id.* at ___, 133 S. Ct. at 1970. The Supreme Court sanctioned the warrantless search in *King* as a routine booking procedure, not as a search incident to arrest. *Id.* at ___, 133 S. Ct. at 1971, 1977. *King* therefore does not permit a warrantless search, as here, when officers have discretion to conduct the search based on individualized suspicion and concerns about evidence preservation, rather than on an administrative interest in identifying the arrestee.

Likewise, *Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602 (1989), although at least involving a breath test, is a case that arose under a different branch of Fourth Amendment doctrine. In *Skinner*, the Supreme Court upheld a warrantless breath test for railroad employees who worked in a "regulated industry" and had effectively "consent[ed] to significant restrictions in [their] freedom of movement where necessary for [their] employment." *See id.* at 624-25, 628. The triggering event for the breath test conducted in *Skinner* was a "major train accident," not an arrest, and its purpose was safety, not prosecution. *Id.* at 609, 621, 622 n.6. *Skinner* was, in other words, a "special needs" case, and like *King*, the Supreme Court recognized that it was departing from "the usual warrant and probable-cause requirements" applicable to law enforcement. *Id.* at 620 (quoting *Griffin v. Wisconsin*, 483 U.S. 868, 873-74 (1987)). In this case, the State has not identified a "special need" for the warrantless breath test it sought to administer to Bernard.

quantitative and a qualitative sense from other objects that might be kept on an arrestee's person." *See Riley*, ___ U.S. at ___, 134 S. Ct. at 2489.[2]

Second, the court fails to acknowledge that a search incident to arrest is limited to evidence found *on* an arrestee's body.  Typically, a person taking a breath test must insert a tube into his or her mouth and then comply with the officer's instructions to blow into the tube at a specified rate until the breathalyzer has had sufficient time to analyze a sample of deep-lung air.  *See, e.g.*, *California v. Trombetta*, 467 U.S. 479, 481 (1984) (describing requirements for administering the Intoxilyzer).  Failure to produce an "adequate . . . sample" is punishable by up to 7 years in prison.  *See* Minn. Stat. §§ 169A.20, subds. 2-3, 169A.51-52 (2014).  The court does not cite a single Supreme Court case authorizing such a profound intrusion *into* a person's bodily integrity during a search incident to arrest.  *Cf. Skinner*, 489 U.S. 616-17 (recognizing that testing deep-lung breath, like conducting a blood test, raises "similar concerns about bodily integrity"); *King*, ___ U.S. at ___, 133 S. Ct. at 1989 (Scalia, J., dissenting) ("I doubt that the proud men who wrote the charter of our liberties would have been so eager to open their mouths for royal inspection.").  The reason is that no such case exists.

---

[2]     Even if breath can somehow be considered a "physical object" that is "personal property," any breath test that could have been performed in this case would still not qualify as a search incident to arrest because it would have been "remote in time or place from the arrest." *United States v. Chadwick*, 433 U.S. 1, 15 (1977) (quoting *Preston v. United States*, 376 U.S. 364, 367 (1964)), *abrogated on other grounds by California v. Acevedo*, 500 U.S. 565 (1991).  In fact, that is precisely what the Texas Court of Criminal Appeals, the court of last resort for criminal matters in Texas, recently recognized in the context of a blood draw. *See State v. Villarreal*, ___ S.W.3d ___, 2014 WL 6734178, at *15 (Tex. Crim. App. Nov. 26, 2014) (quoting *Chadwick*, 433 U.S. at 15).

A warrantless search is unreasonable unless it falls within a specific exception to the warrant requirement. *Riley*, ___ U.S. at ___, 134 S. Ct. at 2482. Instead of acknowledging that its decision repudiates longstanding Fourth Amendment principles, the court responds by saying that the Supreme Court has never explicitly forbidden the particular type of warrantless search at issue in *this* case. Such reasoning, however, turns the warrant requirement on its head, allowing it to serve as a presumption in favor of warrantless searches rather than as a safeguard against them.

B.

The court's second assumption is equally extreme: that the rationales for the search-incident-to-arrest exception—officer safety and preventing the destruction of evidence—do not apply to searches of a person. Again, the court's assumption is in conflict with Supreme Court precedent.

In *Chimel v. California*, 395 U.S. 752 (1969), the Supreme Court considered whether an arrest of a person in his home permitted the police to search the entirety of the arrestee's three-bedroom home, including his attic and garage. The Supreme Court invalidated the search and identified the two rationales that support searches incident to arrest: protecting the safety of officers and preventing the concealment and destruction of evidence. *Id.* at 762-63. Those rationales allow an arresting officer, without a warrant, to (1) "search the person arrested in order to remove any weapons," (2) "search for and seize any evidence *on the arrestee's person* in order to prevent its concealment or destruction," and (3) search in "the area into which an arrestee might reach." *Id.* (emphasis added); *see also Riley*, ___ U.S. at ___, 134 S. Ct. at 2483 (quoting *Chimel*,

395 U.S. at 762-63). The court now contends, however, that neither rationale applies to a search for evidence on an arrestee's person, but only to searches of the area under the arrestee's immediate control.

As support, the court seizes on *Riley*'s acknowledgement of "*Robinson*'s admonition that searches of a person incident to arrest, 'while based upon the need to disarm and to discover evidence,' are reasonable regardless of 'the probability in a particular arrest situation that weapons or evidence would in fact be found.' " ___ U.S. at ___, 134 S. Ct. at 2485 (quoting *Robinson*, 414 U.S. at 235). The court references this statement as proof that, "far from overruling or narrowing *Robinson*, the [Supreme] Court [in *Riley*] recognized again *Robinson*'s 'categorical rule' allowing a search of the person of an arrestee justified only by the custodial arrest itself . . . ."

The court misinterprets *Robinson*, and entirely ignores the remainder of *Riley*, including its holding, which "decline[d] to extend *Robinson* to searches of data on cell phones" based on the rationales from *Chimel*. ___ U.S. at ___, 134 S. Ct. at 2485. As the Supreme Court explained, *Robinson* rejected the need for "case-by-case adjudication" to determine whether the *Chimel* rationales were present in a "particular arrest situation." *Id.* at ___, ___, 134 S Ct. at 2483, 2485; *see also United States v. Chadwick*, 433 U.S. 1, 14-15 (1977) (explaining that *Robinson* eliminated the need for an arresting officer "to calculate the probability that weapons or destructible evidence may be involved" before conducting a search incident to arrest), *abrogated on other grounds by California v. Acevedo*, 500 U.S. 565 (1991). But neither *Robinson* nor *Riley* rejected the *Chimel* rationales as bookends for the circumstances under which the search-incident-to-arrest

exception applies.[3] *See, e.g.*, *Knowles v. Iowa*, 525 U.S. 113, 119 (1998) (rejecting the search-incident-to-arrest exception in the context of issuance of citations, "a situation where the concern for officer safety is not present to the same extent and the concern for destruction or loss of evidence is not present at all."). After all, the Supreme Court framed the question in *Riley* as "whether application of the search incident to arrest doctrine to this particular category of effects would '*untether the rule from the justifications underlying the* Chimel *exception.*' " *Riley*, 134 S. Ct. at 2485 (emphasis added) (quoting *Arizona v. Gant*, 556 U.S. 332, 343 (2009)).

More broadly, it is clear that the court *needs* to cast aside the *Chimel* rationales to reach its decision today. The *only* justification for allowing police to conduct a warrantless breath test is the preservation of evidence due to the natural dissipation of alcohol from a person's bloodstream. In *McNeely*, however, the Supreme Court specifically rejected the proposition that the natural metabolization of alcohol constitutes a *per se* exigency justifying a warrantless blood test. ___ U.S. at ___, 133 S. Ct. at 1568. It explained that blood alcohol testing

> is different in critical respects from other destruction-of-evidence cases in which the police are truly confronted with a " 'now-or-never' " situation. In contrast to, for example, circumstances in which the suspect has control

---

[3] In fact, in an opinion concurring in part and concurring in the judgment, Justice Alito wrote separately to advance a variation on the court's argument today: that "the [search-incident-to-arrest] rule is not closely linked to the need for officer safety and evidence preservation" because "these rationales fail to explain the rule's well-recognized scope." *Riley*, ___ U.S. at ___, 134 S. Ct. at 2496 (Alito, J., concurring). Whatever the merits of Justice Alito's argument, it is notable that no other member of the Supreme Court joined Justice Alito's concurrence, and that the majority opinion in *Riley* continued to adhere to the two rationales from *Chimel*.

> over easily disposable evidence, BAC evidence from a drunk-driving suspect naturally dissipates over time in a gradual and relatively predictable manner.

*Id.* at ___, 133 S. Ct. at 1561 (internal citations omitted). The Supreme Court then made clear that officers are required to get a warrant to test a suspect's blood alcohol content if they can reasonably do so under the circumstances. *Id.* at ___, 133 S. Ct. at 1561-63; *see also Riley*, ___ U.S. at ___, 134 S. Ct. at 2495 (stating that the answer to "what police must do before searching a cell phone seized incident to arrest is accordingly simple—get a warrant"). It strains credulity to suppose that, after the Supreme Court carefully examined the exigent-circumstances exception in *McNeely*, it would conclude in some future case that the search would have been justified anyway under the search-incident-to-arrest doctrine, which according to *Chimel* and *Riley* turns on the same rationale regarding the preservation of evidence that the Supreme Court explicitly rejected in *McNeely*. *See* ___ U.S. at ___, 133 S. Ct. at 1557 (noting that McNeely was under arrest when the blood test was performed); *see also State v. Villarreal*, ___ S.W.3d ___, 2014 WL 6734178, at *15 (Tex. Crim. App. Nov. 26, 2014) (holding that the search-incident-to-arrest exception "is inapplicable" to a warrantless blood draw because neither of the two *Chimel* justifications applies). In fact, by casting aside *Chimel*'s rationales and creating a novel bright-line rule, the court simply readopts a per se exigency under a different name. *See State v. Shriner*, 751 N.W.2d 538, 549 (Minn. 2008) (establishing the evanescent nature of alcohol in the bloodstream as a single-factor exigency), *abrogated by Missouri v. McNeely*, ___ U.S. ___, 133 S. Ct. 1552, 1558 & n.2 (2013) (no such single-factor exigency exists).

## II.

The only remaining question is whether the test-refusal statute, which requires a person to submit to a breath, blood, or urine test upon suspicion of drunk driving or face stiff criminal penalties, is constitutional.  *See* Minn. Stat. §§ 169A.20; 169A.24; 169A.25; 169A.26 (2014) (making the crime of test refusal a first-, second-, or third-degree driving-while-impaired offense depending on whether an aggravating factor is present). We conclude that, in Bernard's case, it is not.

In *Camara v. Municipal Court of S.F.*, 387 U.S. 523 (1967), the Supreme Court held that a state cannot criminalize the refusal to consent to an illegal warrantless search. *Id.* at 540; *see also See v. City of Seattle*, 387 U.S. 541 (1967) (companion case).  The appellant in *Camara* was charged with a misdemeanor offense when he refused to allow housing inspectors to enter his residence to conduct a search of the premises without a warrant.  387 U.S. at 525-27.  The prosecution arose out of a San Francisco ordinance that allowed certain "[a]uthorized employees" of the City to "enter, at reasonable times, any building, structure, or premises in the City to perform any duty imposed upon them by the Municipal Code."  *Id.* at 526, 527 n.2.  Once the Supreme Court concluded that the search was illegal, it held that the "appellant had a constitutional right to insist that the inspectors obtain a warrant to search and that appellant may not constitutionally be convicted for refusing to consent to the inspection."  *Id.* at 540.

There are, to be sure, instances in which it would be constitutional to apply the test-refusal statute to impose criminal penalties on suspected drunk drivers who refuse a blood, breath, or urine test.  But those instances are limited to circumstances in which the

underlying search would be constitutional, such as those identified in *McNeely* when, under a totality of the circumstances, it is unreasonable for officers to obtain a warrant. *McNeely*, ___U.S.___, 133 S. Ct. at 1561. The State does not argue in this case that it was unreasonable for the officers to obtain a warrant under the totality of the circumstances. Accordingly, because the search in this case was not a valid warrantless search, and the State may not constitutionally convict persons who exercise their "constitutional right to insist that [police] obtain a warrant," *Camara*, 387 U.S. at 540, we would affirm the district court's decision to dismiss the two counts of test refusal against Bernard.

For the foregoing reasons, we respectfully dissent.