STATE of Minnesota, Respondent,

v.

Danny ORTEGA, Appellant.

No. A07–22.

Supreme Court of Minnesota.

July 30, 2009.

Lawrence Hammerling, Chief Appellate Public Defender, Theodora Gaïtas, Assistant State Public Defender, St. Paul, Minnesota, for appellant.

Lori Swanson, Attorney General, Tibor M. Gallo, Assistant Attorney General, St. Paul, Minnesota; and Ross Arneson, Blue Earth County Attorney, Mankato, Minnesota, for respondent.

## OPINION

PAGE, Justice.

Appellant Danny Ortega was charged with one count of fifth-degree cocaine possession under Minn.Stat. § 152.025, subd. 2(1) (2008). Before trial, Ortega moved to suppress all evidence of his narcotics possession, contending that the evidence was the product of an illegal search and seizure. After a contested omnibus hearing, the district court denied Ortega's motion. Using the procedure approved in *State v. Lothenbach,* 296 N.W.2d 854 (Minn.1980),[1] Ortega stipulated to the evidence against him. The district court found him guilty. The court of appeals affirmed his conviction. *See State v. Ortega,* 749 N.W.2d 851 (Minn.App.2008). We affirm.

On August 7, 2004, State Trooper Chad Mills, accompanied by a certified drug-sniffing dog, stopped a vehicle driven by Lorna Sorg for speeding and because the vehicle did not display a front license plate. Ortega was a passenger in the front seat of the vehicle. While speaking to Sorg, Mills became suspicious of criminal activity because Sorg appeared "overly nervous," with the pulse in her neck visible, and constantly smoked, while Ortega looked straight ahead and avoided looking at Mills. Mills also smelled the faint odor of burnt marijuana.

After Mills checked Sorg's license plate and driver's license, he asked Sorg to get out of the vehicle so that he could question her without Ortega present. Sorg denied any drug use in the vehicle, but when asked about marijuana she was silent, looked at the ground, and rubbed her arms. After returning Sorg's driver's li-

---

1. In *State v. Lothenbach,* we authorized the submission of a criminal case for a court trial based on stipulated facts, rather than the entry of a guilty plea, to preserve the defendant's right to appeal pretrial decisions regarding the suppression of evidence. 296 N.W.2d at 857–58. We note that as of April 1, 2007, Minn. R.Crim. P. 26.01, subd. 4, implements and supersedes the procedure authorized by *Lothenbach.* Minn. R.Crim. P. 26 cmt.

cense and giving her a warning about the license plate, Mills asked for consent to search the vehicle. Sorg consented, and Mills directed Sorg to stand at the front of the vehicle. Mills then went around to the passenger side and had Ortega get out. At the omnibus hearing, Ortega stated that when he got out of the vehicle he felt as if he could leave the scene because he did not think he had done anything wrong, but that he decided to stay and follow Officer Mills' instructions. Mills testified that Ortega was not free to leave and that when he asked Ortega to step out of the vehicle, he intended to keep Ortega at the scene while he conducted the vehicle search.

Both Mills and Ortega testified that Ortega voluntarily gave Mills a folded pocketknife. Ortega testified at the omnibus hearing that he took a small amount of marijuana out of his pocket and handed it to Mills at the same time that he gave Mills the pocketknife because he figured Mills would find the marijuana during the frisk. Consistent with Ortega's testimony, Mills testified at the omnibus hearing that Ortega handed him the marijuana. After the weapons frisk, Mills instructed Ortega to stand at the front of Sorg's vehicle for safety reasons while Mills searched the vehicle. At some point, Mills also called for back-up.

Mills used the drug-sniffing dog to search the vehicle; the dog alerted on the driver's side front floor, the center console, and the seat on which Ortega had been sitting. Mills found $295 in cash in Sorg's purse, which was on the driver's side front floor, and a rolled-up dollar bill in the center console cup holder. The dollar bill contained a white powdery residue that field-tested positive for cocaine. Mills did not find anything on the front passenger seat. According to Ortega, after completing the search of the vehicle, Mills in-formed Sorg and Ortega that they were under arrest. Mills then searched Sorg, who, during the search, admitted to using cocaine several days earlier but denied knowing anything about the cocaine on the dollar bill. Mills subsequently handcuffed Sorg and placed her in his squad car.

According to his police report, Mills, based on the odor of marijuana, the mari-juana found on Ortega, and the dog alert on Ortega's seat, searched Ortega a second time. At the omnibus hearing, Mills de-scribed this search of Ortega as a "[p]roba-ble cause for narcotics" search. During this search, Mills found a dollar bill con-taining cocaine in Ortega's back pocket and $253 in Ortega's wallet.

As a result of the cocaine found during the second search, Ortega was charged with one count of fifth-degree cocaine pos-session under Minn.Stat. § 152.025, subd. 2(1). Before trial, Ortega moved to sup-press all evidence of his narcotics posses-sion, contending that the evidence was the product of an illegal search and seizure. Ortega also moved to have the complaint against him dismissed for lack of probable cause. After the district court denied Ortega's motions, Ortega stipulated to the evidence using the procedure approved in *State v. Lothenbach*, and the district court found him guilty. The district court sen-tenced Ortega to one year and one day in prison, but stayed the execution of his sentence for five years.

■ On appeal to the court of appeals, Ortega argued (1) that Mills unlawfully expanded the scope of the traffic stop by requesting Sorg's consent to search the vehicle and (2) that the second search of his person was unconstitutional. *Ortega*, 749 N.W.2d at 853–54. The court of ap-peals affirmed, concluding that Sorg's ner-vousness and the odor of marijuana justi-fied Mills' request to search the vehicle and that either the odor of marijuana or

the amount of marijuana that Ortega handed to Mills provided "probable cause to search" Ortega.[2] *Id.* at 854.

On appeal to us, Ortega contends that the cocaine found during Mills' second search should be suppressed because it was the product of an illegal search. He also argues that there was no basis for Mills to conduct the weapons frisk[3] or to detain him during the vehicle stop.

## I.

When reviewing a district court's pretrial order on a motion to suppress evidence, "we review the district court's factual findings under a clearly erroneous standard and the district court's legal determinations de novo." *State v. Jordan,* 742 N.W.2d 149, 152 (Minn.2007). We may independently review facts that are not in dispute and "determine, as a matter of law, whether the evidence need be sup-

pressed." *State v. Othoudt,* 482 N.W.2d 218, 221 (Minn.1992). Because Ortega stipulated to the evidence against him using the procedure approved in *State v. Lothenbach,* our review is further limited to the pretrial order that denied Ortega's motion to suppress. *State v. Busse,* 644 N.W.2d 79, 88–89 (Minn.2002).

Ortega argues that the search that uncovered the cocaine in his back pocket was unconstitutional. Both the Fourth Amendment to the United States Constitution and Article I, Section 10, of the Minnesota Constitution guarantee the "right of the people to be secure in their persons, houses, papers, and effects" against "unreasonable searches and seizures." Warrantless searches are generally unreasonable unless they fall within a recognized warrant exception. *State v. Burbach,* 706 N.W.2d 484, 488 (Minn.2005). "One exemption from the warrant require-

2. The court of appeals relied on *State v. Wicklund,* 295 Minn. 403, 205 N.W.2d 509 (1973), to find that the search that uncovered the cocaine in Ortega's back pocket was justified. In *Wicklund,* we concluded that the odor of burnt marijuana and the passenger's furtive movements provided probable cause, which "clearly justified" a search of the passenger. *Id.* at 405, 205 N.W.2d at 511. At the time, possessing any amount of marijuana was a criminal offense. Minn.Stat. § 152.15, subd. 2(4) (1971). But this statute was amended in 1976 to provide that possessing a small amount of marijuana was only a petty misdemeanor. Act of March 11, 1976, ch. 42, § 1, 1976 Minn. Laws 101, 102 (codified as Minn. Stat. § 152.15, subd. 2(5) (1976)). We have since concluded that probable cause to suspect that a person possesses a non-criminal amount of marijuana, in and of itself, does not trigger the search-incident-to-arrest exception to the warrant requirements of the Fourth Amendment. *State v. Martin,* 253 N.W.2d 404, 405–06 (Minn.1977).

We take this opportunity to clarify that the odor of burnt marijuana justified the warrantless search in *Wicklund* because it provided the officer probable cause to believe Wicklund

possessed a *criminal* amount of marijuana as possession of any amount of marijuana was a crime under then-existing law. We also note that, although "probable cause to arrest" satisfies the search-incident-to-arrest exception to the Fourth Amendment warrant requirement when an arrest is made, "probable cause to search" does not necessarily trigger an exception to the warrant requirement or lead to the conclusion that the search was otherwise reasonable. *See In Re Welfare of G.M.,* 560 N.W.2d 687, 692 (Minn.1997) (explaining that "[u]nless one of the well-delineated exceptions is applicable, police need both probable cause and a warrant before they can seize an item from a person").

3. Ortega argues that the non-criminal amount of marijuana that he handed to Officer Mills before the warrantless weapons frisk should be suppressed because Mills did not have a reasonable, articulable suspicion to frisk him for weapons. We need not decide this issue because, as discussed below, the marijuana discovered during the frisk was not necessary to justify the search incident to arrest that led to Mills' discovery of cocaine in Ortega's back pocket. In addition, the State did not charge Ortega with possession of the marijuana.

ment is that a person's body and the area within his or her immediate control may be searched incident to a lawful arrest." *State v. Robb*, 605 N.W.2d 96, 100 (Minn. 2000) (citing *Chimel v. California*, 395 U.S. 752, 763, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969)). We conclude that the cocaine found in the vehicle provided probable cause to arrest Ortega and thus search him incident to his arrest.

There is probable cause to arrest without a warrant when a person of ordinary care and prudence, viewing the totality of circumstances objectively, would entertain an honest and strong suspicion that a *specific* individual has committed a crime. *In Re Welfare of G.M.*, 560 N.W.2d 687, 695 (Minn.1997). The crime for which probable cause exists must be one for which a custodial arrest is authorized. *State v. Varnado*, 582 N.W.2d 886, 892 (Minn.1998). Cocaine possession is such a crime. Minn.Stat. § 152.025, subd. 3.

A person may constructively possess contraband jointly with another person. *State v. Lee*, 683 N.W.2d 309, 316 n. 7 (Minn.2004) (explaining that if the police find the contraband in a place where others have access, the constructive-possession doctrine requires "a strong probability, inferable from the evidence, that the defendant was, at the time, consciously exercising dominion and control over it"). But mere proximity to criminal activity does not establish particularized probable cause that a person is engaged in criminal activity. *See Ybarra v. Illinois*, 444 U.S. 85, 90–92, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979) (concluding that a search warrant for a tavern and bartender did not permit police to search patrons). In *State v. Slifka*, 256 N.W.2d 90, 91 (Minn.1977), we held

that a passenger's mere presence in a motor vehicle did not provide the officer probable cause to believe the passenger constructively possessed marijuana discovered in a closed glove compartment.[4]

When the evidence recovered by officers indicates that a vehicle's occupants were engaged in common criminal enterprise, the officer may have probable cause to arrest a passenger in a vehicle. *Maryland v. Pringle*, 540 U.S. 366, 372, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003). In *Maryland v. Pringle*, the United States Supreme Court found particularized probable cause to arrest a front-seat passenger when a consented-to search of the vehicle uncovered $763 of rolled-up cash in the glove compartment and five plastic glassine bags of cocaine in between an armrest and the back seat of the car. *Id.* at 371–72, 124 S.Ct. 795. In upholding the search, the court noted that drug dealers do not usually include innocent persons in their activity, that the evidence tended to indicate that all the occupants were engaged in a common enterprise to conceal their wrongdoing, and that there was no information about which of the vehicle's three occupants owned the contraband. *Id.* at 372–73, 124 S.Ct. 795.

In a slightly different context, the United States Supreme Court has recognized that contraband that is in plain view in a motor vehicle supports a rational inference that all the vehicle occupants were aware of the contraband and had the ability and intent to exercise dominion and control over the contraband. . *County Court of Ulster County v. Allen*, 442 U.S. 140, 164–65, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979) (upholding a statutory presumption

---

4. Although the officer in *Slifka* observed an open bottle of alcohol in plain view between the vehicle seats, the bottle did not provide probable cause to arrest the passenger for an open bottle violation because the open bottle statute expressly required that the open bottle be on the passenger's person. *Slifka*, 256 N.W.2d at 91.

that the presence of a firearm in an automobile is evidence of its illegal possession by all persons then occupying the vehicle, explaining that there was a rational connection between the basic facts the prosecution proved and the ultimate fact presumed). However, "[a]ny inference that everyone on the scene of a crime is a party to it must disappear if the Government informer singles out the guilty person." *United States v. Di Re*, 332 U.S. 581, 594, 68 S.Ct. 222, 92 L.Ed. 210 (1948).

Ortega argues that the cocaine in the vehicle was only linked to Sorg and could not provide particularized probable cause to arrest him.[5] He notes that, upon finding the cocaine in the vehicle, Officer Mills first questioned Sorg and only indicated that the rolled-up dollar bill was visible from the driver's seat. Unlike *Pringle*, the evidence in this case does not indicate that Sorg and Ortega were engaged in drug dealing. However, when combined with the odor of burnt marijuana, Mills' discovery of the cocaine-laced dollar bill in an unconcealed location that was accessible to both Sorg and Ortega would cause a person of ordinary care and prudence to entertain an honest and strong suspicion that Ortega constructively possessed the cocaine jointly with Sorg. Sorg's statements to Mills did not dispel this rational inference because her statements did not single out the guilty person. While Sorg admitted to using cocaine several days earlier, she denied knowing about the cocaine in the dollar bill. Our analysis is consistent with other courts that have considered whether the presence of unconcealed contraband in a motor vehicle provides an officer probable cause to arrest all the occupants of the motor vehicle. *See, e.g.,*

*Perkins v. United States*, 936 A.2d 303, 308 (D.C.2007) (holding that the defendant's proximity as an automobile passenger to unconcealed contraband provided the officer probable cause to arrest the defendant, absent other countervailing facts).

Ortega argues that Mills did not list the cocaine found in the vehicle as a basis for the second search, but rather Mills referenced the odor of marijuana, the dog alert on Ortega's seat, and the non-criminal amount of marijuana that Ortega gave to Mills. On that basis, Ortega contends that the cocaine found in the vehicle was not the reason that Mills arrested him. But even if Mills did not rely on the cocaine found in the vehicle as the basis for Ortega's arrest, we have upheld an arrest and a search incident to that arrest when there is an objective legal basis for them, even if the officer based his or her actions on the wrong grounds. *State v. Olson*, 482 N.W.2d 212, 214 (Minn.1992). As there was objective legal basis to arrest Ortega for the cocaine found in the vehicle, we conclude that the search that uncovered the cocaine in Ortega's back pocket was a lawful search incident to arrest.

## II.

■ Ortega also argues that even if the cocaine found in the vehicle provided Officer Mills a legal basis to search his back pocket incident to arrest, Mills unlawfully detained him before Mills found the cocaine-laced dollar bill in the vehicle. Ortega asserts that after he handed Mills the non-criminal amount of marijuana, Mills was constitutionally required to issue a citation and permit him to leave instead

---

5. Ortega also contends that the cocaine found in his back pocket when Officer Mills searched him the second time improperly provided the basis to justify that second search. We need not address this argument

because the cocaine-laced dollar bill discovered in the motor vehicle before the second search provided Mills a proper basis to arrest Ortega and thus to conduct the second search.

of ordering him to stand at the front of the vehicle. If he had been permitted to leave, Ortega argues that he would not have been present during the vehicle search when the cocaine was found. We reject Ortega's argument because valid officer safety concerns justified Mills' request for Ortega to exit the vehicle and stand away from the passenger compartment.

■ In the context of vehicle stops, we have interpreted Article I, Section 10, of the Minnesota Constitution to provide more protection from unreasonable searches and seizures than the Fourth Amendment to the United States Constitution. *State v. Askerooth,* 681 N.W.2d 353, 362 (Minn.2004); *see also State v. Fort,* 660 N.W.2d 415, 417–19 (Minn.2003). We have concluded that in the context of vehicle stops, in order to search or seize, there must be an individualized, articulable, and reasonable suspicion of wrongdoing. *Askerooth,* 681 N.W.2d at 364–65. We balance the government's need to search or seize a vehicle's occupants against " 'the individual's right to personal security free from arbitrary interference by law officers.' " *Id.* at 365 (quoting *United States v. Brignoni–Ponce,* 422 U.S. 873, 878, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975)).

■ We have held that confining a driver stopped for a minor traffic violation may be justified if it "reasonably relate[s] to ... a threat to officer safety." *Id.* at 369–70. When balancing a passenger's liberty interest against the state's interest in investigating criminal activity and protecting officer safety, the cause to detain a passenger is not as strong as that to detain a driver because the driver has already committed a minor vehicle offense. *Maryland v. Wilson,* 519 U.S. 408, 413–14, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997). But police can order a passenger out of a vehicle, as the passengers are already stopped by the stop of the vehicle, and the only

change is that they are outside of, and not inside of, the stopped vehicle. *Id.* Moreover, officer safety concerns increase when there is a passenger in a stopped vehicle as both the passenger and the driver may have similar motivations to prevent the discovery of crime in the vehicle by use of violence. *Id.* at 414. A police officer is "not constitutionally required to give [a passenger] an opportunity to depart the scene after he exited the vehicle without first ensuring that, in so doing, [the officer is] not permitting a dangerous person to get behind [the officer]." *Arizona v. Johnson,* —— U.S. ——, 129 S.Ct. 781, 788, 172 L.Ed.2d 694 (2009).

Here, as in *Wilson* and *Johnson,* Mills was justified in having Ortega leave the vehicle as the vehicle was already stopped and the only change was that Ortega was outside, instead of inside, the vehicle. Further, Mills was a sole officer stopping a vehicle with two occupants. He had a valid officer-safety concern in having Ortega stand away from the passenger compartment. Thus, we conclude that it was reasonable to have Ortega exit the vehicle and stand away from the passenger compartment while it was being searched. Ortega's right to be free from unreasonable searches or seizures under the Fourth Amendment to the United States Constitution and Article I, Section 10, of the Minnesota Constitution was not violated.

Affirmed.