*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1866**

State of Minnesota,
Respondent,

vs.

Iri Armando Ruiz-Deleon,
Appellant.

**Filed November 23, 2015
Reversed and remanded
Cleary, Chief Judge
Dissenting, Schellhas, Judge**

Hennepin County District Court
File No. 27-CR-14-2298

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Elizabeth R. Johnston, Assistant
County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Lydia Villalva Lijó, Assistant
Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Cleary, Chief Judge; Schellhas, Judge; and

Klaphake, Judge.*

_____

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to
Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**CLEARY**, Chief Judge

Appellant Iri Armando Ruiz-Deleon was convicted of first-degree aggravated robbery after a pat-search near the scene of the robbery produced a metal pen and $71 in cash, which appellant stated did not belong to him. Appellant challenges the conviction, arguing that the fruits of this search should have been suppressed as the result of an unconstitutional search. Because we conclude that this evidence was collected in violation of appellant's constitutional rights and erroneously admitted at trial, we reverse and remand for a new trial.

## FACTS

On January 24, 2014, 911 emergency response received a call from a cab driver reporting that he had been robbed by a customer. Police dispatch informed officers that a suspect had committed a robbery with a knife and was believed to be fleeing on foot northbound on Portland Avenue with stolen cash. The suspect was described as a Hispanic male, approximately 5' 6" tall and wearing dark clothing. A few blocks from the location of the crime, officers saw appellant walking down the sidewalk and three officers stopped to question him. The officers shouted for appellant to stop and put his hands up, and he complied. The three officers approached appellant, and at least one officer had his gun drawn. One officer placed appellant in handcuffs, on his knees, and conducted a pat-search. The search produced a wallet that contained no money. Due to several factors, appellant and the officers had difficulty communicating. Appellant seemed to be intoxicated and was slurring his speech. Appellant is a

2

Spanish-speaker and spoke limited English, repeating a few phrases many times. The arresting officer spoke limited Spanish and communicated partially in English and partially in Spanish. The officers learned appellant's name from the identification in his wallet and determined that he had no open warrants. The officers then released appellant and told him to go home.

However, as one officer walked away from appellant back to his squad car, appellant walked towards him and spoke to him. As the officer was speaking with appellant, he also began communicating by radio with another officer who was with the victim a few blocks away. The other officer informed him that, according to the victim, the suspect had asked the victim to go to Buena Vista Apartments. The officer testified his suspicion of appellant was renewed because of appellant's strange behavior and because appellant had earlier told the officer that his destination was Buena Vista Apartments. The officer then handcuffed and pat-searched appellant.

This second pat-search produced two items that the officer felt inside appellant's sweatshirt pocket and then removed: a pen and $71 of cash. The officer also testified that he saw the cash protruding from appellant's sweatshirt pocket. The officer asked appellant if the money was his and appellant said, "it's not my money." The victim was brought to the scene of arrest for a "show-up" identification where he identified appellant as the perpetrator. On January 27, appellant was charged with Aggravated Robbery First Degree under Minn. Stat. § 609.245, subd. 1 (2012).

On May 1, 2014 the court held a *Rasmussen* hearing. Appellant's attorney argued for suppression of the show-up identification of appellant on the basis that it

3

was impermissibly suggestive. Appellant's attorney did not argue for suppression of any statements made by appellant at the scene of arrest or physical evidence acquired by police. The court denied the motion to suppress.

Appellant's jury trial began on June 16, 2014. On June 18, appellant's attorney moved to reopen the *Rasmussen* hearing to argue that appellant's statement at the scene of arrest, "it's not my money," should be suppressed. Although the state objected to the motion on several grounds, the court found good cause to hear the belatedly raised suppression issue. The court heard arguments regarding appellant's motion to suppress the statement. Only one witness, the arresting officer, testified at the *Rasmussen* hearing. Following testimony, appellant's attorney made a new argument for suppression of physical evidence obtained through the pat-search at the scene of arrest. The court denied the motion to suppress the statement and the motion to suppress physical evidence. In its memorandum in support of the order denying the motions, the court found that at the time of the relevant statement, appellant was neither in police custody nor subject to police interrogation. The court also stated that the physical evidence "was uncovered by both a 'plain feel' and 'plain view' search, and thus, the evidence should be admissible." A jury found appellant guilty. This appeal followed.

## D E C I S I O N

"When reviewing a pretrial order on a motion to suppress, we review the district court's factual findings under our clearly erroneous standard. We review the

4

district court's legal determinations, including a determination of probable cause, de novo." *State v. Milton*, 821 N.W.2d 789, 798 (Minn. 2012) (citation omitted).

The Fourth Amendment to the United States Constitution and article I, section 10 of the Minnesota Constitution guarantee an individual's right to be free from unreasonable searches and seizures. *State v. Jackson*, 742 N.W.2d 163, 174-75 (Minn. 2007). Evidence seized in violation of the constitution must generally be suppressed. *Id.* at 177-78. "Warrantless searches are generally unreasonable unless they fall within a recognized warrant exception." *State v. Ortega*, 770 N.W.2d 145, 149 (Minn. 2009). One of the exceptions to the warrant requirement is for protective pat-down searches on the outside of a suspect's clothing to find weapons. *Terry v. Ohio*, 392 U.S. 1, 29-31, 88 S. Ct. 1868, 1883-85 (1968). Under *Terry*, a police officer "may stop and frisk a person when (1) they have a reasonable, articulable suspicion that a suspect might be engaged in criminal activity and (2) the officer reasonably believes the suspect might be armed and dangerous." *State v. Dickerson*, 481 N.W.2d 840, 843 (Minn. 1992), *aff'd*, 508 U.S. 366, 113 S. Ct. 2130 (1993). "The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence . . . ." *Adams v. Williams*, 407 U.S. 143, 146, 92 S. Ct. 1921, 1923 (1972).

Appellant argues that the second pat-search performed by the arresting officer was not based on a reasonable belief that appellant was armed and dangerous, and thus the pen and cash discovered during that search should be suppressed. Appellant argues that because the officer had "conducted a pat-search of appellant just moments

earlier" and appellant "made no furtive, threatening or unexpected movements during [the] encounter," or otherwise indicated he was a threat, the second pat-search was impermissible. The state responds that due to factual developments after the first pat-search, the second pat-search was justified.

Generally, "once a *Terry* search has determined that the suspect is not armed, the police may not without probable cause once again search the suspect." *State v. Flowers*, 734 N.W.2d 239, 255 (Minn. 2007) (quotation omitted). However, the supreme court has held that even after an initial *Terry* stop, behavior or circumstances that give an officer heightened suspicion can justify a second pat-down. *Id.* When analyzing whether a search was justified, the court must evaluate the totality of the circumstances from the perspective of a reasonable person and give "due weight . . . to the specific reasonable inferences [that the officer] is entitled to draw from the facts in light of his experience." *Terry*, 392 U.S. at 27, 88 S. Ct. at 1883; *see also Appelgate v. Comm'r of Pub. Safety*, 402 N.W.2d 106, 108 (Minn. 1987).

The officer who performed the search gave two explanations for the search during his testimony. First, the officer stated the search was to determine if appellant possessed the stolen money. The state does not assert that the officer had probable cause to search appellant or that appellant was under arrest at the time of the search. The pat-search cannot be justified if the purpose was to search appellant for evidence of the crime. *Flowers*, 734 N.W.2d at 250-51 (citing *Williams*, 407 U.S. at 146, 92 S. Ct. at 1923).

Second, the officer stated the search was for officer safety. The state argues that the search was justified under *Terry* as a pat-search for officer safety. However, this explanation cannot be squared with the facts in this case. When officers first approached appellant, they placed him on his knees and in handcuffs and performed a thorough pat-search. After detaining appellant for this first search and questioning him for about four minutes, they released him and told him to go home. The officer walked back to his squad car, and appellant was out of his sight for a few seconds. After appellant resumed conversation with the officer, the officer handcuffed appellant and performed another thorough pat-search.

The district court stated that "[t]his [second] pat down search was necessary since the individual had been out of law enforcement control, no matter how brief a time." This was based on the officer's testimony that it was his habit to perform another pat-search of a suspect if he was out of his sight for any amount of time. However, this habit does not create a reasonable belief that appellant was armed and dangerous. By the time of the second pat-search, appellant was in handcuffs and had already been thoroughly searched for weapons. In these circumstances, appellant's having been out of sight for a few seconds did not provide officers with reasonable grounds to believe that appellant was armed or presented a threat to officer safety. In the absence of this reasonable suspicion, the officer was not permitted to perform the pat-search. Because the unjustified search was in violation of appellant's rights under the Fourth Amendment to the United States Constitution and article I, section 10 of the

7

Minnesota Constitution, the fruits of this search must be suppressed. *State v. Harris*, 590 N.W.2d 90, 97 (Minn. 1999).

Appellant argues on appeal that three pieces of evidence should have been suppressed: the cash and pen produced by the pat-search and appellant's statement, "It's not my money."[1] The cash and pen were directly produced by the illegal search and these items must be suppressed. *Id.* The district court erred by admitting these fruits of the search. Appellant's statement was given just after the illegal search. This court must determine whether the taint of the illegal search requires the statement to be suppressed as "fruit of the poisonous tree." *Wong Sun v. United States,* 371 U.S. 471, 488, 83 S. Ct. 407, 417 (1963).

In *Wong Sun*, the United States Supreme Court ruled:

> We need not hold that all evidence is fruit of the poisonous tree simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.

*Id.* at 487-88, 83 S. Ct. at 417 (quotation omitted). The Minnesota Supreme Court has outlined several factors that determine whether the illegal government action has tainted the evidence sought to be admitted.

> These factors include the purpose and flagrancy of the misconduct, the presence of intervening circumstances, whether it is likely that the evidence would have been

---

[1] Appellant has not raised the issue of the admissibility of the show-up identification on appeal. Thus, the court does not reach this issue.

> obtained in the absence of the illegality and the temporal proximity of the illegality and the evidence alleged to be the fruit of the illegality.

*State v. Warndahl*, 436 N.W.2d 770, 776 (Minn. 1989).

Appellant's statement, "It's not my money," must be suppressed. The statement was made by appellant in response to being confronted with the fruits of the illegal search. The confrontation occurred immediately after the illegal search and it is unlikely that the statement would have been made absent the unconstitutional intrusion. It is tainted by the illegal search and the district court erred by admitting the statement.

Finally, this court must determine whether the erroneous admission of this evidence requires reversal of appellant's conviction. "When an error implicates a constitutional right, we will award a new trial unless the error is harmless beyond a reasonable doubt." *State v. Davis*, 820 N.W.2d 525, 533 (Minn. 2012). "An error is harmless beyond a reasonable doubt if the jury's verdict was surely unattributable to the error." *Id.* (quotation omitted). When determining if a verdict is surely unattributable to erroneously admitted evidence, this court should consider "the manner in which the evidence was presented, whether it was highly persuasive, whether it was used in closing argument, and whether it was effectively countered by the defendant." *State v. Sterling*, 834 N.W.2d 162, 171 (Minn. 2013) (quotation omitted). The relevant inquiry "is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict

actually rendered in *this* trial was surely unattributable to the error." *State v. Juarez*, 572 N.W.2d 286, 292 (Minn. 1997) (quotation omitted).

Here, the district court erred by admitting the cash and pen found on appellant along with appellant's statement, "It's not my money." This evidence played a large part in the state's case against appellant. The prosecutor repeatedly referred to this evidence. First, the state presented the arresting officer's testimony that the search of appellant produced approximately the amount of cash reported stolen and a pen that the officer believed could be used as a weapon. These items were placed into evidence as exhibits. The officer also testified that appellant made the statement that the money was not his. Further, the prosecutor asked appellant about this statement in cross-examination. Despite the video evidence of appellant making this statement, appellant denied making it, likely affecting his credibility to the jury. Finally, in closing arguments, the prosecutor described the items found on appellant and quoted this statement. He emphasized that the amount of cash found on appellant was approximately the amount that the victim reported stolen and referred to the pen, stating that appellant "was armed with an item used in a manner to lead the victim to reasonably believe that the article was a dangerous weapon."

The fruits of the illegal search were a highly persuasive part of the prosecutor's evidence. They were presented in closing arguments as clear evidence of elements of the crime. Appellant could not effectively counter this evidence. A reasonable jury would, at minimum, consider this persuasive evidence in making its decision. The guilty verdict in this case was not surely unattributable to the erroneously admitted

evidence. Because appellant was prejudiced by evidence collected in violation of his constitutional rights and erroneously admitted at trial, we reverse and remand for a new trial.[2]

      **Reversed and remanded.**

---

[2] Because we are reversing and remanding for a new trial, we need not address allegations of prosecutorial misconduct or other issues raised in appellant's pro se supplemental brief.

**SCHELLHAS**, Judge (dissenting)

I respectfully disagree that the district court erred by denying appellant's suppression motion.

The Richfield Police Department dispatched Officer Brian Bataglia "to the area of 62nd and Portland Avenue on a report of a robbery, cab driver held at knife point. Suspect took cash and was fleeing northbound on Portland Avenue." The dispatcher advised that the suspect was a Hispanic male who was approximately five feet six inches tall and wearing dark clothing. At the mid-trial *Rasmussen* hearing, Officer Bataglia testified that he was en route to the location of the victim when another officer advised that he was with a male party matching the suspect's description. Officer Bataglia then responded to assist that officer. Officer Bataglia testified that "[he] began to approach the suspect from the south . . . [and] told the suspect to put his hands up; the suspect was not compliant." Officer Bataglia then spoke Spanish to the suspect and told him to get down on his knees, and the suspect did not comply. At that point, "[Officer Bataglia] holstered [his] gun which was originally at the low ready, . . . placed the male suspect down onto his knees and placed him into handcuffs for officer safety." Officer Bataglia performed a quick safety pat-search. As noted by the district court, the squad videos, admitted into evidence at the *Rasmussen* hearing, depict this encounter.

Officer Bataglia testified that during this time period, the suspect, later identified as appellant, was speaking in Spanish and was belligerent. But when Officer Bataglia learned that appellant had no warrants, he removed his handcuffs. Because Officer Bataglia had not located a knife, he told another officer to "get [appellant] ID'd and kick

D-1

him so that [they could] continue to search the area for the suspect." Officer Bataglia asked the dispatcher to notify Minneapolis police that the officers were hoping to set up a perimeter to conduct a canine search for the suspect. The officers instructed appellant to "go home" and walked back to their squad cars.

But appellant did not follow the officers' instruction to go home. As noted by the district court, this is apparent in the squad videos. Instead of following the officers' instruction, appellant followed Officer Bataglia from a distance of about 10 to 15 feet, speaking to Officer Bataglia in English and stating that "it was [appellant's] brother." Officer Bataglia questioned appellant regarding his brother's identity and asked whether his brother had been in the cab, and Officer Bataglia believed that appellant "could possibly be involved in the situation." Officer Bataglia therefore again detained appellant and sought additional information about the robbery from the officer who was with the victim. Officer Bataglia learned that only one passenger was in the cab at the time of the robbery and that the passenger had asked to be dropped off at the Buena Vista Apartments. Appellant then stated that he was headed to the Buena Vista Apartments, and Officer Bataglia conducted another pat-search and discovered a pen and cash. When asked why he conducted a second pat-search, Officer Bataglia testified that "[m]ore details involved had come out to implicate this male party and coming from, or going to the location of where the cab driver was suppose[d] to drop him off." When asked directly whether the pat-search also was for officer safety, Officer Bataglia said yes.

On cross-examination, Officer Bataglia agreed that appellant was "extremely intoxicated," and the squad videos are consistent with that testimony. Also on cross-

examination, Officer Bataglia testified that he did not immediately place appellant in handcuffs when appellant mentioned his brother and that he could not recall whether he handcuffed appellant for the second time before or after the second pat-search. Regarding officer safety, Officer Bataglia explained the need for the second pat-search as follows: "[I]f [the suspect] is not in total—if I am not monitoring him and if I take my eyes off him at any time then he will be patted down again for officer safety."

On redirect examination, Officer Bataglia testified that during the second pat-search, he saw and felt money coming out of appellant's sweatshirt pocket and removed the money "to establish that the dollar amount that [appellant] had on him was similar to the dollar amount that the victim stated that was taken from him" in order to "[d]etermine if we had the correct party detained." After Officer Bataglia discovered the money in appellant's sweatshirt pocket, appellant volunteered that the money was not his.

The district court found Officer Bataglia's testimony to be "credible in all respects." When reviewing the denial of a motion to suppress evidence, "[appellate courts] review the district court's factual findings under a clearly erroneous standard." *State v. Gauster*, 752 N.W.2d 496, 502 (Minn. 2008) (quotation omitted). "Such findings can be held to be clearly erroneous only if, on the entire evidence, [the appellate court is] left with a definite and firm conviction that a mistake has occurred." *State v. Stephenson*, 310 Minn. 229, 231, 245 N.W.2d 621, 623 (1976).

The Fourth Amendment to the United States Constitution and Article I of the Minnesota Constitution prohibit the unreasonable search and seizure of "persons, houses, papers, and effects." U.S. Const. amend. IV; Minn. Const. art. I, § 10. Warrantless

searches are per se unreasonable, subject to limited exceptions. *State v. Othoudt*, 482 N.W.2d 218, 222 (Minn. 1992) (citing *Katz v. United States*, 389 U.S. 347, 357, 88 S. Ct. 507, 514 (1967)). One such exception was recognized in *Terry v. Ohio*, which set forth the circumstances in which police may constitutionally "stop and frisk" suspicious persons without a warrant. 392 U.S. 1, 10, 88 S. Ct. 1868, 1874 (1968). Under *Terry*, police may "stop and frisk a person when (1) they have a reasonable, articulable suspicion that a suspect might be engaged in criminal activity and (2) the officer reasonably believes the suspect might be armed and dangerous." *State v. Dickerson*, 481 N.W.2d 840, 843 (Minn. 1992), *aff'd*, 508 U.S. 366, 113 S. Ct. 2130 (1993).

"The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry*, 392 U.S. at 27, 88 S. Ct. at 1883. "The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence . . . ." *Adams v. Williams*, 407 U.S. 143, 146, 92 S. Ct. 1921, 1923 (1972). When determining whether an officer reasonably conducted a pat-search, "due weight must be given . . . to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." *Terry*, 392 U. S. at 27, 88 S. Ct. at 1883.

Appellant challenges the constitutional validity of Officer Bataglia's second pat-search. He argues that the district court erred by not suppressing the pen and cash because the second pat-search was not based on a reasonable belief that appellant was armed and dangerous. Appellant's focus on Officer Bataglia's subjective reasons for the pat-search

is misplaced. We should assess Officer Bataglia's decision to conduct a second pat-search of appellant under an objective standard, as instructed by the United States Supreme Court in *Terry*.

> The scheme of the Fourth Amendment becomes meaningful only when it is assured that at some point the conduct of those charged with enforcing the laws can be subjected to the more detached, neutral scrutiny of a judge who must evaluate the reasonableness of a particular search or seizure in light of the particular circumstances. And in making that assessment it is *imperative that the facts be judged against an objective standard:* would the facts available to the officer at the moment of the seizure or the search warrant a man of reasonable caution in the belief that the action taken was appropriate?

*Id.* at 21–22, 88 S. Ct. at 1880 (emphasis added) (quotation omitted). We therefore should not speculate regarding Officer Bataglia's subjective reasons for the pat-search.

Appellant also argues that the second pat-search was invalid because there was no reason to believe that he was armed and dangerous. But an officer need not be absolutely certain that an individual is armed before conducting a pat-search; instead, the issue is whether a reasonably prudent officer in the circumstances would be justified in believing that his safety or that of others was in danger. *Id.* at 27, 88 S. Ct. at 1883. We must give "due weight . . . to the specific reasonable inferences [that the officer] is entitled to draw from the facts in light of his experience." *Id.*

The state persuasively argues that the circumstances in this case—particularly appellant's belligerent conduct during the initial encounter with police, his failure to follow the instruction to go home, and his peculiar pursuit of and attempt to engage Officer Bataglia from behind—objectively support a suspicion that appellant might be

armed and dangerous. *Cf. State v. French*, No. A13-0062, 2014 WL 1271875, at *3 (Minn. App. Mar. 31, 2014) (noting that handcuffed suspect whom officer had pat-searched and was escorting suddenly broke free and brandished knife with eight-inch blade), *review denied* (Minn. June 17, 2014). I disagree with the majority that "appellant's having been out of sight for a few seconds did not provide officers with reasonable grounds to believe that appellant was armed or presented a threat to officer safety." I would conclude that a reasonably prudent officer in the circumstances would have been warranted in the belief that his safety or that of others was in danger and, accordingly, that Officer Bataglia's second pat-search of appellant was reasonable.

A pat-search must be "confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer." *Terry*, 392 U.S. at 29, 88 S. Ct. at 1884. But police may seize nonthreatening contraband detected during a pat-search under the plain-view doctrine, so long as the search "stays within the bounds marked by *Terry*." *Dickerson*, 508 U.S. at 373, 113 S. Ct. at 2136. "Under [the plain-view] doctrine, if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant." *Id.* at 375, 113 S. Ct. at 2136–37. As applied in the pat-search context,

> [i]f a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the

same practical considerations that inhere in the plain-view context.

*Id.* at 375–76, 113 S. Ct. at 2137. The incriminating character of the item seized must be "immediately apparent" without the need to conduct "some further search of the object." *Id.* at 375, 113 S. Ct. at 2137.

Here, the district court found that Officer Bataglia discovered the cash by both a plain-feel and plain-view search and concluded that the evidence therefore was admissible. We must defer to the court's credibility determinations, *Dickerson*, 481 N.W.2d at 843, and nothing in the record supports a conclusion that the court's findings are clearly erroneous. I would affirm the court's conclusion that Officer Bataglia did not violate appellant's constitutional right to be free from unreasonable search and seizure; the court therefore did not err by denying appellant's suppression motion.

Regarding the majority's conclusion that the district court erred by not suppressing appellant's statement that the money was not his, I would conclude that any error was harmless. "When an error implicates a constitutional right, [an appellate court] will award a new trial unless the error is harmless beyond a reasonable doubt. An error is harmless beyond a reasonable doubt if the jury's verdict was surely unattributable to the error." *State v. Davis*, 820 N.W.2d 525, 533 (Minn. 2012) (quotation and citation omitted). When determining if a verdict is surely unattributable to erroneously admitted evidence, the court must consider "the manner in which the evidence was presented, whether it was highly persuasive, whether it was used in closing argument, and whether it was effectively countered by the defendant." *State v. Sterling*, 834 N.W.2d 162, 171 (Minn.

2013) (quotation omitted). "[T]he admission of a defendant's statements to police at trial in violation of *Miranda* does not require a new trial if the state can show beyond a reasonable doubt that the error was harmless." *State v. Farrah*, 735 N.W.2d 336, 343 (Minn. 2007). The question to be asked is: "What effect did the jury's hearing the defendant's statement actually have on the guilty verdict rendered?" *Id.* (quotation omitted).

Here, appellant's statement "clearly had no substantial or significant impact on the verdict." *See State v. Walsh*, 495 N.W.2d 602, 605 (Minn. 1993) (concluding that although statements made by defendant while handcuffed to handrail violated *Miranda*, statements "clearly had no substantial or significant impact on the verdict"). Appellant's statement did not play a major role in the state's case; the state presented the evidence in a manner whereby the jury would not have focused unduly on it, and it was not the focus of any single witness's testimony. The prosecutor did not dwell on it in either the opening statement or closing argument. And as in *Walsh*, "[t]he evidence against [appellant] was strong," and "[t]he statement[] made . . . [was] quite innocuous." *Id.* The victim identified appellant as the perpetrator. Appellant stated that he was heading to the Buena Vista Apartments, and the cab passenger had asked to be brought to the same location before he robbed the victim. Appellant fit the physical description of the perpetrator, he had cash on his person in an amount that the victim reported as stolen, and he possessed a metal pen that the victim could have mistaken for a knife. Moreover, appellant availed himself of the opportunity to counter the evidence, arguing that the statement was consistent with his account of events and that he was merely communicating that the money in his pocket

had been given to him by a friend. I would conclude that the district court's erroneous admission of the evidence was harmless. *See Walsh*, 495 N.W.2d at 605.

Based on the foregoing, I would affirm appellant's conviction.