*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0331**

State of Minnesota,
Respondent,

vs.

Michael Donovan Krauss,
Appellant.

**Filed February 1, 2016
Affirmed
Kirk, Judge**

Mower County District Court
File No. 50-CR-13-360

Lori Swanson, Attorney General, Karen B. Andrews, Assistant Attorney General, St. Paul, Minnesota; and

Kristen Nelsen, Mower County Attorney, Austin, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Rachel F. Bond, Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Kirk, Presiding Judge; Stauber, Judge; and Kalitowski, Judge.[*]

_____

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**KIRK**, Judge

Appellant challenges his convictions of ineligible person in possession of a firearm and fifth-degree possession of a controlled substance, arguing that the district court erred by declining to suppress evidence because his arrest was unlawful. We affirm.

**FACTS**

On February 15, 2013, a Mower County deputy stopped a Cadillac driving south on Highway 218 near Austin for speeding. Appellant Michael Donovan Krauss was driving and B.S. was in the front passenger seat.

The deputy ran the Cadillac's license plate and learned that it was registered to C.B. He then approached the Cadillac, where appellant identified himself by name and date of birth, but was unable to produce his driver's license or proof of insurance. Appellant explained to the deputy that he recently purchased the Cadillac from C.B. and that he thought that the vehicle was insured. Although appellant told the deputy that he had a handwritten receipt confirming the purchase of the Cadillac, he was unable to locate it. Appellant also told the deputy that once they were free to leave, B.S. would drive.

When the deputy asked where he was from, appellant stated that he was originally from California but that he currently resides in Michigan. He did not provide an explanation for being in the Austin area. The deputy testified at the omnibus hearing that the Cadillac contained "a lot of stuff," including multiple suitcases, garment bags, and personal electronics.

The deputy ran the names of both appellant and B.S. and learned that neither of them had a Minnesota driver's license and that B.S.'s California license was revoked. The deputy then placed appellant under arrest for driving without a license, no proof of insurance, and speeding, and placed him in the back of his squad vehicle. The deputy testified that he placed appellant under arrest because "[t]he [Cadillac] was packed like they were moving," "[t]hey were heading south away from Austin," and that he wanted to "hold him for bail to ensure a court appearance."

The deputy returned to the Cadillac to advise B.S. that she would not be allowed to drive the vehicle. The deputy testified that when she rolled down her window he observed "a moderate odor of marijuana." The deputy asked B.S. if she knew of any marijuana in the vehicle and she responded that there were "some marijuana cigarette roaches in the ashtray." The deputy did not see any roaches from where he was standing, but he did see "a green, leafy substance," that he recognized as marijuana located in the carpet and on the center console.

The deputy placed B.S. in the back of a squad vehicle and began to search the Cadillac. He found a gallon-size bag containing a considerable amount of marijuana in the glove box. The deputy had the vehicle towed back to the law enforcement center because of the cold weather. During an inventory search, he also discovered a pistol in the trunk.

Appellant was charged with ineligible person in possession of a firearm and fifth-degree possession of a controlled substance. Appellant filed three separate motions to suppress the evidence found in the vehicle and all three were denied by the district court. A jury trial was held. At trial, the deputy testified about the discovery of the pistol and the

marijuana, and B.S. testified that the pistol and marijuana belonged to appellant. The jury found appellant guilty of both counts. This appeal follows.

## D E C I S I O N

In reviewing a district court's pretrial order on a motion to suppress evidence, we review the court's factual findings under a clearly erroneous standard and its legal determinations de novo. *State v. Ortega*, 770 N.W.2d 145, 149 (Minn. 2009). "We may independently review facts that are not in dispute and determine, as a matter of law, whether the evidence need be suppressed." *Id.* (citation omitted).

Appellant's argument for suppression hinges on his contention that his arrest was impermissible under Minn. R. Crim. P. 6.01, which provides:

> Subd. 1. Mandatory Citation Issuance in Misdemeanor Cases.
>
> (a) *By Arresting Officer*. In misdemeanor cases, peace officers who decide to proceed with prosecution and who act without a warrant must issue a citation and release the defendant unless it reasonably appears:
>> (1) the person must be detained to prevent bodily injury to that person or another;
>> (2) further criminal conduct will occur; or
>> (3) a substantial likelihood exists that the person will not respond to the citation.

In denying appellant's motion, the district court concluded that subparts 2 and 3 of the rule were satisfied because arresting appellant "ensured he would respond to the citation and prevented further criminal conduct of unlawful traffic violations." We agree.

First, it was reasonable for the deputy to conclude that an arrest was necessary to prevent further criminal conduct. *See* Minn. R. Crim. P. 6.01, subd. 1(a)(2). The deputy testified that appellant was unable to produce a driver's license or proof of insurance and

4

that B.S.'s California license was revoked.  He also testified that, despite telling B.S. that she could contact C.B. and having dispatch attempt to locate C.B.'s phone number, he was unable to determine if the Cadillac was insured.  Therefore, had the deputy cited and released appellant, appellant or B.S. would likely have operated the Cadillac without a valid driver's license and proof of insurance.  *See* Minn. Stat. §§ 169.791, subd. 2(a) (stating "[e]very driver shall have in possession at all times when operating a vehicle . . . proof of insurance . . . covering the vehicle being operated"), 171.08 (stating "[e]very licensee shall have [their driver's] license in immediate possession at all times when operating a motor vehicle"), and 171.24, subd. 2 (2012) (stating it is a misdemeanor for an individual to operate a motor vehicle while the person's license is revoked).

Appellant argues that "while neither [appellant] nor [B.S.] had a driver's license, the record does not conclusively show that they could not have called someone to come meet them and drive the [Cadillac]."  But this argument fails because even if someone with a valid driver's license came to drive the Cadillac, that individual would still be operating the vehicle without proof of insurance.  *See* Minn. Stat. § 169.791, subd. 2(a).

Second, it was reasonable for the deputy to conclude that there was a substantial likelihood that appellant would not respond to the citations.  *See* Minn. R. Crim. P. 6.01, subd. 1(a)(3).  The deputy testified that when he stopped appellant he was traveling south on Highway 218, away from Austin, and that there were multiple suitcases, garment bags, and personal electronics in the vehicle.  He also testified that appellant stated that he was from California and Michigan and did not provide an explanation for why he was in the Austin area.  Further, appellant was driving a Cadillac registered to another person, and he

5

could not prove that the vehicle was lawfully in his possession. Therefore, it was reasonable for the deputy to arrest appellant to ensure he would respond to the citations.

Appellant argues that his case is unlike *Carradine v. State* because there "was no evidence where [appellant] was going generally, or whether he was actually leaving the state specifically." 494 N.W.2d 77, 83 (Minn. App. 1992) (concluding that a "reasonably competent law enforcement officer" could believe that there was a substantial likelihood that an individual would fail to respond to a citation where the record demonstrated that the individual and his traveling companion were not Minnesota residents and that the individual was driving at a high rate of speed toward the airport), *aff'd in part, rev'd in part on other grounds*, 511 N.W.2d 733 (Minn. 1994). This argument is not persuasive. The deputy did not need to know definitively where appellant was going or that he was leaving the state in order to make a valid arrest. Minn. R. Crim. P. 6.01 only requires that it "reasonably appear" that a substantial likelihood exists that the person will not respond to the citation.

Further, the other cases appellant relies on are distinguishable from the facts of the instant case. In *State v. Varnado*, the supreme court noted that "[t]he record is absent of facts supporting a belief that a custodial arrest was necessary to prevent Varnado from hurting someone or to ensure that she would respond to a citation." 582 N.W.2d 886, 893 (Minn. 1998). In *In re Welfare of M.D.B.*, the officer "did not testify that he had reason to believe that securing appellant was necessary to prevent injury or that there was a substantial likelihood that appellant would fail to respond to a citation." 601 N.W.2d 214, 217 (Minn. Ct. App. 1999), *review denied* (Minn. Jan. 18, 2000). Here, the record contains

ample facts supporting a belief that custodial arrest was necessary to ensure appellant would respond to the citations, including the deputy's testimony that he had a reason to believe that there was a substantial likelihood that appellant would fail to respond to the citations.

In sum, the district court did not err by concluding that appellant's arrest was permissible under Minn. R. Crim. P. 6.01 and by denying his motions to suppress.

**Affirmed.**