REYES, Judge
In this direct appeal from a conviction of unlawfully possessing a firearm suppressor, appellant argues that evidence obtained as a result of the search must be suppressed because the search warrant was unconstitutionally overbroad and officers exceeded the scope of the warrant by searching his separately rented bedroom. We affirm.
FACTS
On November 16, 2017, Minnesota River Valley Drug Task Force agents applied for and received a warrant to search a house on South Front Street in St. Peter, Minnesota.[1] Upon executing the search warrant, two agents approached the house and made contact with D.H.J., the registered occupant. D.H.J. informed them that another person was in the house, appellant Richard Ford Marsh. She also informed the agents that they would likely find methamphetamine in the residence.
The agents went upstairs and found appellant behind a partially closed door in a bedroom. Agents had to "talk him out" of the room, as he initially refused to leave. Appellant exited the room, and the agents conducted a search. Agents found a digital scale, homemade smoking devices, glass pipes, a gun case with guns and ammunition, syringes, and plastic baggies. Agents also found three cylindrical objects in the room, which further investigation revealed were used homemade firearm suppressors.
Respondent State of Minnesota charged appellant with unlawful possession of a firearm suppressor, fifth-degree possession of a controlled substance, possession of hypodermic needles, and possession of drug paraphernalia.
Appellant moved to suppress the evidence gathered as a part of the search and to dismiss all charges for lack of probable *828 cause. The district court held a contested omnibus hearing on the issue of whether the police had the authority to enter appellant's room as a part of their search of the house. D.B., a building administrator for the City of St. Peter, testified for the state, noting that transforming a traditional single-family house into a rental unit, or renting out a room, requires a rental license. He testified that D.H.J. had not registered the house as a rental unit with the city.
Agent Isaacson, an agent involved in the search, also testified on behalf of the state. He described the outside of the house as a traditional, two-story house. When he entered the bottom floor, it included a kitchen, dining room, living room, and an open staircase leading to a second floor. Upon going up the stairs, the agents came upon an open area with a mini fridge and doors leading to bedrooms. Appellant's bedroom door was partially open, with a padlock on the outside. After talking with appellant, he agreed to leave and they conducted the search. The room did not have any number or signage on it identifying it as a separate rental unit.
Detective Grochow testified on behalf of the defense and explained that, as a part of his work with the Drug Task Force, he was familiar with the house. He had visited the house two to three years earlier and knew that there were multiple people living in it besides D.H.J. at that time. He testified that, as part of his work with the drug court, there were concerns regarding this house and suspicions that other people were living there. Detective Grochow explained that it was "implied" that other people lived at the house, but acknowledged that he had no "direct information."
Appellant also testified. He explained that, at the time of the search, he had been living at the house and paying about $ 120 every two weeks in rent. He explained that he lived in a room upstairs, and that D.H.J. lived on the bottom floor. During his time living there, multiple people resided in the house, always renting a room upstairs. A padlock secured the outside of his door, and he could lock it from the inside with a locking mechanism.
The district court denied appellant's motions to suppress and dismiss. The district court found as follows:
Law enforcement did not, at the time that the warrant application was submitted have reason to believe that there was any portion of [the house] that constituted a residence separate from the rest of the house. Detective Grochow was only aware that other individuals besides [D.H.J.] had lived in the house at some time in the past and that he had spoken to someone in an upstairs bedroom 2-3 years prior to the execution of the warrant. ... The house itself was not listed on city records as a licensed rental property.
Moving its consideration to the execution of the warrant, the district court then determined that
[o]ther than the padlock there were no indications that the bedroom might be the separately occupied living quarters-as opposed to merely a room-of some individual. There was no unit number displayed on or near the bedroom door. There were no signs telling others to keep out of the bedroom.
The district court ultimately determined that the "officers' execution of the search warrant was reasonable," and that "[t]he validity of the warrant for the house is not disputed."
After the district court issued this order, the parties agreed to a Minn. R. Crim. P. 26.01 subd. 4, stipulated-evidence trial. The parties agreed that the issue, "did law enforcement unconstitutionally exceed the scope of the warrant by searching Defendant's bedroom" was dispositive of the case and a full trial would be unnecessary *829 if appellant succeeded on appeal. After the stipulated-evidence trial, the district court found appellant guilty of unlawfully possessing a firearm suppressor, in violation of Minn. Stat. § 609.66, subd. 1a(a)(1) (2016). The district court explained that "[appellant] wishes to preserve for appeal the issue of whether law enforcement officers validly entered and searched a room that he was occupying at the residence when the search warrant was for the house, and not specifically for his room." This appeal follows.
ISSUES
I. Did appellant preserve for appeal the issue of the overbreadth of the search warrant?
II. Did the officers' search of appellant's rented bedroom exceed the scope of the search warrant?
ANALYSIS
"When reviewing a district court's pretrial order on a motion to suppress evidence, we review the district court's factual findings under a clearly erroneous standard and the district court's legal determinations de novo." State v. Ortega , 770 N.W.2d 145, 149 (Minn. 2009) (quotation omitted). This court therefore independently determines, as a matter of law, whether the evidence against appellant must be suppressed. Id. Following a stipulated-evidence trial, this court's review "is further limited to the pretrial order that denied [appellant's] motion to suppress." Id.
I. Appellant did not preserve for appeal the issue of the overbreadth of the search warrant.
Appellant argues that the warrant, when issued, was overbroad because it did not mention appellant or his room. Appellant forfeited this issue.
In a stipulated-evidence trial, "the parties agree that the court's ruling on a specified pretrial issue is dispositive of the case" which would allow the defendant "to preserve the [pretrial] issue for appellate review." Minn. R. Crim. P. 26.01, subd. 4(a). "The defendant must also acknowledge that appellate review will be of the pretrial issue, but not of the defendant's guilt, or of other issues that could arise at a contested trial." Id. , subd. 4(f).
Appellant expressly agreed that the dispositive issue for appeal was "did law enforcement unconstitutionally exceed the scope of the warrant by searching [appellant's] bedroom." In that agreement, he stated, "I acknowledge that appellate review in this case will only be of the pretrial ruling described in paragraph 1 of this document." (Emphasis added.) This document confirms that the parties did not agree to preserve for appeal the overbreadth of the search warrant.
Furthermore, the district court did not decide this issue in its pretrial order. The district court expressly stated, "The validity of the warrant for the house is not disputed. Defendant argues that his rented bedroom was beyond the scope of the warrant issued for the house." The district court's limited ruling then held that the search of appellant's bedroom was reasonable. See Ortega , 770 N.W. 2d at 149 ("Because Ortega stipulated to the evidence against him ... our review is further limited to the pretrial order that denied Ortega's motion to suppress."). Given that this court's review is expressly limited to the pretrial ruling by the district court, appellant did not preserve this issue for appeal, and therefore forfeited it. See Roby v. State , 547 N.W.2d 354, 357 (Minn. 1996) (stating that a reviewing court "will not decide issues which were not raised before the district court, including constitutional questions of criminal procedure.").
*830 II. The district court did not err by determining that the officers' search of appellant's rented bedroom did not exceed the scope of the search warrant.
Appellant argues that the officers exceeded the scope of the warrant in their search because they should have known that his locked room comprised a separate residence. We disagree.
"A search pursuant to a warrant may not exceed the scope of that warrant." State v. Soua Thao Yang , 352 N.W.2d 127, 129 (Minn. App. 1984) (citing Mapp v. Ohio , 367 U.S. 643, 81 S. Ct. 1684, 6 L.Ed.2d 1081 (1961) ). "The test for determining whether a search has exceeded the scope of the warrant is one of reasonableness." Id. (citing Illinois v. Gates , 462 U.S. 213, 235-36, 103 S. Ct. 2317, 2331, 76 L.Ed.2d 527 (1983) ). In determining whether the officers acted reasonably in executing the search warrant, this court must look at the totality of the circumstances. State v. Thisius , 281 N.W.2d 645, 645-46 (Minn. 1978).
In Minnesota, the "general rule is that a search warrant for a multiple occupancy building is invalid unless it describes the particular unit to be searched with sufficient definiteness." State v. Lorenz , 368 N.W.2d 284, 286 (Minn. 1985) (quotations omitted). However, if the police, acting reasonably, do not learn until executing the warrant that the building is a multiple-occupancy residence, such a warrant is valid. Id. This "multiple occupancy" rule applies to traditional apartment buildings, and does not apply in situations of "community occupation" when two or more people "occupy a single residence in common rather than individually, as where they share common living quarters but have separate bedrooms." Id. at 286 (quotation omitted). The supreme court in Lorenz determined that even though the officers knew at the time they applied for the warrant that the apartment was occupied by more than one person, the warrant was still valid because it was a situation of community occupation, where the occupants shared common living areas but had separate bedrooms. Id. at 286. This is factually different than the circumstances here. According to the warrant application, law enforcement believed the house to be a single-family residence prior to obtaining the warrant and conducting the search. They did not know that another person, besides D.H.J., lived in the house.
There is little Minnesota caselaw on this particular issue. The district court relied on a United States Supreme Court case, Maryland v. Garrison , 480 U.S. 79, 107 S. Ct. 1013, 94 L.Ed.2d 72 (1987), in concluding that the officers had no reason to believe that the residence was multiple-occupancy, and we agree that the facts in that case are analogous to the present situation.
In Garrison , law-enforcement officers obtained a warrant to search "the premises known as 2036 Park Avenue third floor apartment." Id. at 80, 107 S. Ct. at 1014. The police mistakenly believed there was only one apartment on the third floor when actually there were two, the second rented by the defendant. Id. The Supreme Court held that the search warrant was valid when it was issued but that "[i]f the officers had known, or should have known, that the third floor contained two apartments before they entered the living quarters on the third floor, and thus had been aware of the error in the warrant, they would have been obligated to limit their search." Id. at 86, 107 S. Ct. at 1017-18. The Court thus summarized the primary issue as being "whether the officers' failure to realize the overbreadth of the warrant was objectively understandable and reasonable" and concluded that it was.
*831 Id. at 88, 107 S. Ct. at 1018. In applying Garrison to the facts of this case, we hold that the validity of the search of a rented room, pursuant to a warrant authorizing the search of the entire house, depends on whether officers reasonably knew or should have known that it was a multiple-occupancy building at the time of the search.
Here, from outward appearances, the house was a single-family residence. There were two doors, front and back, and one mailbox. Upon entering, an open staircase provided the only way to access the second floor, which meant the agents had to go through the main floor to the stairs. Once inside, law enforcement had access to the entire house. The upstairs common space had a mini fridge and doors leading to bedrooms and a bathroom, but there were no room or unit numbers and no signs indicating private residences. All of these would have indicated to the agents that this was indeed a single-family home.
The most significant fact that weighs in favor of appellant is that he had a padlock on the front of his door. However, while a lock on a resident's door may be a factor to consider, it is not determinative of whether law enforcement objectively should have recognized it as a separate residence. Courts in other jurisdictions have held similarly. See State v. Anderson , 84 Hawai'i 462, 935 P.2d 1007, 1014 (1997) ("a locked bedroom door does not, by itself, automatically elevate the bedroom to the status of a separate residential unit"); People v. Siegwarth , 285 Ill.App.3d 739, 220 Ill.Dec. 965, 674 N.E.2d 508, 511 (1996) ("[T]he mere fact that defendant's bedroom was padlocked ... does not mean that the house in fact contained multiple living units."); State v. Hymer , 400 So. 2d 637, 638-39 (La. 1981) (holding that warrant, which stated that premises to be searched was a large, white, wood frame house, authorized search of all portions of house, including locked room occupied by defendant).
Although there are other potential indicators of a multiple-occupancy building, such as a mini fridge on the second floor and the fact that D.H.J. told the officers that appellant was in the house, when viewed in the context of the entire house, these are not enough to have made the officers at the time realize that appellant's room was a separate residence. D.H.J. only told the officers that appellant was upstairs, not that he lived there. Appellant's location would not necessarily have meant that he was a renter, and a padlocked room likewise would not have signaled a separate residential unit, rather than just a secured room. Factors that courts have concluded indicate a separate residence include "separate access from the outside, separate doorbells, and separate mailboxes," and none of those were present here. U.S. v. Kyles , 40 F.3d 519, 524 (2d Cir. 1994). Given the insufficient indicators to objectively notify officers, at the time of the search, that this was a multiple-occupancy residence, the search did not exceed the scope of the search warrant.
DECISION
The validity of a search of a rented room, pursuant to a warrant authorizing the search of the entire house, depends on whether the officers knew or reasonably should have known that it was a multiple-occupancy house during the search.
Under the totality of the circumstances, the lock on appellant's bedroom door was not enough to signal to law enforcement, at the time of the search, that his bedroom was a separate residence. Objectively available facts would have reasonably indicated to police that this was a single-family home. These included: a single mailbox, no separate entrances, open access to all areas *832 of the house including the second floor, and no unit numbers or signs. The police acted reasonably in conducting their search, and appellant's bedroom was not outside the scope of the warrant. The district court therefore did not err in denying appellant's suppression motion.
Affirmed.

Agents conducted a search of the trash at the house and found shotgun shells, matches, and baggies coated with methamphetamine residue. The officers then applied for a search warrant based on the items found in the trash search.